303 F.3d 480
 UNITED STATES of America, Appellee,
v.
James PETTUS, also known as "Mark Williams," also known as "James Williams," also known as "David Williams," also known as "Frank Davis," also known as "Wayne Davis," Appellant.
 No. 01-1250.
 United States Court of Appeals, Second Circuit.
 Submitted April 24, 2002.
 Decided September 09, 2002.
 
 COPYRIGHT MATERIAL OMITTED Anthony N. Iannarelli, Jr., New York, NY, for Appellant.
 James B. Comey, United States Attorney for the Southern District of New York, (Marc A. Weinstein, John M. McEnany, Assistant United States Attorneys, of Counsel, on the brief) for Appellee.
 Barry D. Leiwant, Attorney-in-Charge, Appeals Bureau, The Legal Aid Society, New York, NY, for Amicus Curiae, The Legal Aid Society.
 Before F.I. PARKER, STRAUB, and SOTOMAYOR, Circuit Judges.
 SOTOMAYOR, Circuit Judge.
 
 
 1
 This appeal was brought by a convicted felon following the revocation of his term of supervised release. Appellant claims that the sentence of six months of imprisonment and thirty months of supervised release imposed by the United States District Court for the Southern District of New York (Wood, J.) exceeded the maximum term permitted under 18 U.S.C. § 3583(b) & (h) because the court did not give him credit for the time he had served under his first term of supervised release ("street time") before it was revoked. Appellant argues that the proper reading of § 3583(h) requires courts to grant defendants this credit.[1] Further, he argues that § 3583(h), as interpreted by the district court, violates the Double Jeopardy Clause of the Fifth Amendment. We reject both of these arguments. Section 3583(h) plainly permits judges to impose renewed terms of supervised release without crediting street time. Moreover, this interpretation of the statute does not run afoul of the Double Jeopardy Clause; supervised release is part of the whole matrix of punishment arising out of the original offense, and, as such, Congress has the power to define its length and terms. We affirm the sentence imposed by the district court.
 
 BACKGROUND
 
 2
 Appellant, James Pettus, pleaded guilty to violating 18 U.S.C. § 641, Theft of Government Property, on December 17, 1999. During the two years preceding his arrest, Pettus opened bank accounts under a number of different aliases and used them to buy $14,407 worth of postage stamps, despite the fact that there were insufficient funds in the accounts. The district court ordered Pettus to provide full restitution and sentenced him to eighteen months' imprisonment and three years of supervised release — the maximum amount of supervised release that can be imposed for a Class C felony. 18 U.S.C. § 3583(b)(2).
 
 
 3
 On October 6, 2000, Pettus's prison term ended and he began his term of supervised release. On February 5, 2001, the United States Probation Office submitted a petition requesting a warrant for Pettus's arrest for violating three conditions of his supervised release. Judge Wood granted the warrant and Pettus was re-arrested on April 2, 2001. On April 23, the district court found that Pettus had violated two conditions and sentenced him under § 3583(h) to six months of imprisonment, thirty months of supervised release, and a $100 special assessment. The court also reimposed the previously ordered restitution of $14,407. The court did not give Pettus credit for the time he had previously served on supervised release. Pettus appeals from this sentence.
 
 STANDARD OF REVIEW
 
 4
 Our review of this question of statutory interpretation and of the constitutionality of 18 U.S.C. § 3583(h) is de novo. See United States v. Sanchez, 225 F.3d 172, 175 (2d Cir.2000).
 
 DISCUSSION
 
 5
 The Sentencing Reform Act of 1984, Pub.L. No. 98-473 tit. II, § 212(a)(2), 98 Stat. 1837, 1987, replaced most forms of parole with supervised release overseen by the sentencing court. See Johnson v. United States, 529 U.S. 694, 696-97, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000). Courts are permitted to impose a term of supervised release whenever sentencing a defendant to a term of imprisonment. 18 U.S.C. § 3583(a). When the defendant has committed a Class C felony, as in the instant case, the court may impose up to three years of supervised release. Id. § 3583(b)(2).
 
 
 6
 The imposition of a term of supervised release is not necessarily final. A court may terminate a term of supervised release for good behavior after at least one year has been served, or may lengthen a term up to the maximum authorized amount. § 3583(e)(1), (2). If a defendant violates the conditions set during sentencing, a court can "revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision...." Id. § 3583(e)(3).[2]
 
 
 7
 Most circuit courts originally interpreted subsection (e)(3) as prohibiting the reimposition of a term of supervised release following the revocation of the original term. See Strong v. U.S. Parole Comm'n, 141 F.3d 429, 432 & n. 3 (2d Cir.1998) (citing cases).[3] In 1994, however, Congress amended § 3583 to clarify that courts could reimpose supervised release after revocation. See id. The amended language, contained in subsection (h), reads:
 
 
 8
 Supervised release following revocation — When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.
 
 
 9
 Id. § 3583(h). This text clearly authorizes courts to impose sentences that include both new prison time and new supervised release terms. Any time served in prison after revocation, though, must be credited against the length of the new term of supervised release. See United States v. Merced, 263 F.3d 34, 37-38 (2d Cir.2001) (holding that all prison terms after the first revocation of supervised release must be subtracted from the maximum possible term of supervised release, even if there has been more than one revocation). Pettus maintains that § 3583(h) also requires that defendants be credited for time previously served on supervised release when sentenced to a post-revocation term or else violates the Double Jeopardy Clause.
 
 I. Statutory Interpretation
 
 10
 The Legal Aid Society, as amicus curiae, notes that subsection (h), unlike subsection (e)(3), does not contain language that explicitly tells courts to deny credit for street time when considering a post-revocation sentence. Its amicus brief argues that this Court should read Congress's decision not to add this term to subsection (h) as intentional. The difference between the language of these two subsections, it maintains, suggests that subsection (h) requires courts to credit street time when assigning a new term of supervised release. The amicus brief also invokes the canon of constitutional avoidance. United States v. Delaware & Hudson, 213 U.S. 366, 408, 29 S.Ct. 527, 53 L.Ed. 836 (1909) ("[W]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter."); see also Triestman v. United States, 124 F.3d 361, 377 (2d Cir. 1997). Not giving credit for street time, according to the amicus brief, is constitutionally dubious in light of the Double Jeopardy Clause and, as such, the ambiguous text of subsection (h) should be interpreted to avoid this problem.
 
 
 11
 We find no such ambiguity in the statute and, as discussed infra Part II, no looming constitutional infirmity meriting avoidance. Members of Congress clearly expressed their intent that courts should not give credit to defendants for time previously served on supervised release when assigning new terms of supervised release, and the text of the statute reflects this intent.
 
 
 12
 We start, as always, with the language of the statute, which explicitly states that the maximum term of post-revocation supervised release that can be imposed must be reduced by "any term of imprisonment that was imposed upon revocation of supervised release." 18 U.S.C. § 3583(h) (emphasis added). This language plainly indicates that courts are only required to credit time spent in prison. "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." United States v. Smith, 499 U.S. 160, 167, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991) (quoting Andrus v. Glover Constr. Co., 446 U.S. 608, 616-17, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980)) (internal quotation marks omitted); see also In re Bell, 225 F.3d 203, 214 (2d Cir.2000).
 
 
 13
 The amicus correctly notes that when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Barnhart v. Sigmon Coal Co., 534 U.S. 438, 448, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (quoting Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir.1972))) (internal quotation marks omitted). It fails to note, however, that the text of subsection (h) directly refers to subsection (e)(3) for its definition of the maximum term of imprisonment. See 18 U.S.C. § 3583(h). The restrictions of subsection (e)(3) were thus incorporated into subsection (h) and, because subsection (e)(3) eliminates the possibility that credit must be given for time already served on supervised release, any statement in subsection (h) that credit should not be given would have been repetitive. There is no rule of statutory construction that requires Congress to resort to redundancy in order to effectuate its intentions.
 
 
 14
 Our conclusion here is consistent with other courts that have addressed this issue. The Ninth Circuit examined subsection (h) and held that courts are not required to give credit for time previously served on supervised release. United States v. Cade, 236 F.3d 463, 467 (9th Cir.2000). In rejecting a due process challenge, the Cade court explained that "if a defendant repeatedly violates the conditions of supervised release, the court may repeatedly impose new terms of supervised release without credit for time served on supervised release." Id. Scholarly analyses have reached the same conclusion. See Hon. Harold Baer, Jr., The Alpha & Omega of Supervised Release, 60 Alb. L.Rev. 267, 294-96 (1996); Bryan R. Diederich, Note, Risking Retroactive Punishment: Modifications of the Supervised Release Statute and the Ex Post Facto Prohibition, 99 Colum. L.Rev. 1551, 1557-59 (1999).
 
 
 15
 Moreover, this interpretation is consistent with legislative intent. Subsection (h) was drafted by the United States Sentencing Commission and proposed by letter to Senator Strom Thurmond in 1990. See 136 Cong. Rec. S14,892-97 (1990) (letter from Hon. William W. Wilkins, Jr., Chairman of the U.S. Sentencing Commission, to Sen. Strom Thurmond).[4] The letter explicitly rejected the "extreme" proposal that defendants be credited with time served on supervised release, instead favoring the "middle-ground" solution that defendants receive credit only for time spent in prison. Id. Senator Thurmond then described how the proposed subsection (h) would work, stating that "the defendant would not be credited for actual time spent on supervision (i.e., `street-time') prior to a violation or revocation." 137 Cong. Rec. S7769, 7772 (1991). The Senator explained that denying credit for street time "reflects the need to provide strong incentives to encourage compliance with applicable supervision conditions throughout a required period of supervised release." Id.
 
 
 16
 Our conclusion that § 3583(h) does not require courts to give credit for street time when imposing new terms of supervised release is consistent with the policy concerns animating the supervised release program. While courts have acknowledged that supervised release is technically a punishment, see United States v. Lominac, 144 F.3d 308, 318 (4th Cir.1998), it is primarily intended to protect the public from further crimes by easing the re-entry of a convicted defendant into society through the provision of necessary educational or vocational training and other correctional treatment. 18 U.S.C § 3553(a)(2)(B)-(D); see also United States v. Balogun, 146 F.3d 141, 146 (2d Cir. 1998); Cade, 236 F.3d at 466. Realizing this goal requires that the defendant serve his term of supervised release continuously, rather than in short intervals between prison stays. Otherwise, those who repeatedly violate the terms of their release will never receive the tools or the extended period of guidance necessary to make the change from felon to law-abiding citizen.
 
 
 17
 Furthermore, we reject the amicus's argument that the canon of constitutional avoidance mandates a reading of subsection (h) that forces courts to give credit to defendants for time previously served on supervised release or else violates the Double Jeopardy Clause of the Fifth Amendment. In Harris v. United States, the Supreme Court recently rejected the suggestion that the proper interpretation of a statute should be dismissed for a more dubious one just because the proper interpretation potentially raises constitutional questions. ___ U.S. ___, ___, 122 S.Ct. 2406, 2413, 153 L.Ed.2d 524 (2002). The canon of constitutional avoidance "rests upon our `respect for Congress, which we assume legislates in the light of constitutional limitations.'" Id. (quoting Rust v. Sullivan, 500 U.S. 173, 191, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991)). In Harris, the Court explained that "if we stretched the text [of a statute] to avoid the [constitutional] question ..., the canon would embrace a dynamic view of statutory interpretation, under which the text might mean one thing when enacted yet another if the prevailing view of the Constitution later changed. We decline to adopt that approach." Id. Moreover, the Court has previously noted that "[s]tatutes should be interpreted to avoid serious constitutional doubts, not to eliminate all possible contentions that the statute might be unconstitutional." Reno v. Flores, 507 U.S. 292, 314 n. 9, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1992) (internal citation omitted). In this case the statute is clear, and, as discussed below, we find no constitutional infirmity with its clear meaning.
 
 II. Double Jeopardy Clause
 
 18
 Pettus further argues that § 3583(h), interpreted to deny defendants credit for time previously served on supervised release, runs afoul of the Double Jeopardy Clause of the Fifth Amendment. We disagree. The Supreme Court has outlined the different types of protection that the Double Jeopardy Clause affords: "The Fifth Amendment guarantee against double jeopardy ... has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (footnotes omitted). Pettus maintains that this case implicates the third of these protections. However, a violation of the conditions of supervised release does not constitute a new crime, and the revocation of supervised release is not properly considered a new punishment. See Johnson, 529 U.S. at 700, 120 S.Ct. 1795 ("[P]ostrevocation sanctions [are] part of the penalty for the initial offense...."); United States v. Amer, 110 F.3d 873, 884 (2d Cir.1997). The requirement that a defendant only be punished once for a particular crime does not mean that this punishment cannot be modified or extended. As the Supreme Court has held, "[t]he Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." United States v. DiFrancesco, 449 U.S. 117, 137, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980).
 
 
 19
 Moreover, in United States v. Wirth, this Court noted the well-settled rule that "punishment for a violation of supervised release, when combined with punishment for the original offense, may exceed the statutory maximum for the underlying substantive offense." 250 F.3d 165, 170 n. 3 (2d Cir.2001). Though this may seem inconsistent with Amer's holding that post-revocation sanctions are properly considered part of the penalty for the initial offense, Wirth is, in fact, wholly consistent with this notion. A defendant who is sentenced to supervised release is only punished once for his crime. Wirth merely notes that the length and type of that punishment are governed by two different statutes: the underlying criminal statute and § 3583. Id. There is no constitutionally imposed limit on how long a supervised release term can be. The only question is whether the Double Jeopardy Clause forces courts to sentence a defendant to less than a full term of supervised release after the defendant has violated the conditions of his previous, partially served term.
 
 
 20
 The cases cited by Pettus are inapposite. Each case in which the Double Jeopardy Clause required courts to give defendants credit for time served involved a new conviction for the same offense. In Pearce, the defendants had successfully appealed their convictions. 395 U.S. at 717, 89 S.Ct. 2072. On remand, the lower court re-sentenced the defendants without giving them credit for the time served while the first case was on appeal. Id. The Supreme Court reversed, holding that "the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully credited in imposing sentence upon a new conviction for the same offense." Id. at 718-19, 89 S.Ct. 2072 (Internal quotation marks and footnotes omitted). Lominac involved a similar scenario. 144 F.3d at 318. In that case, an appeal resulted in a finding that a term of supervised release was unconstitutionally imposed upon a defendant and the court found that the time spent on supervised release pending the appeal had to be credited against any new punishment for the same offense. Id. In contrast to these cases, the instant case did not involve a new conviction for the same crime; rather, the revocation of supervised release and the post-revocation sanctions were "part of the whole matrix of punishment which arises out of a defendant's original crime." Amer, 110 F.3d at 884 (internal quotation marks and citation omitted). It is a single sentence for a single offense, and hence the cases cited by Pettus do not govern.
 
 
 21
 Furthermore, double jeopardy jurisprudence relies extensively on legislative intent. "The Fifth Amendment guarantee against double jeopardy embodies ... simply one aspect of the basic principle that within our federal constitutional framework the legislative power, including the power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them, resides wholly with the Congress." Whalen v. United States, 445 U.S. 684, 689, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); see also Jones v. Thomas, 491 U.S. 376, 381, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989) ("Our cases establish that in the multiple punishments context [the interest that the Double Jeopardy Clause seeks to protect] is `limited to ensuring that the total punishment did not exceed that authorized by the legislature.'" (quoting United States v. Halper, 490 U.S. 435, 450, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989))). Neither the Supreme Court nor this Court has ever restricted the legislature's ability to create a two-pronged punishment, such as a fine and a prison sentence for the same crime. In the instant case, it is undisputed that Congress could make Class C felons subject to a longer term of supervised release and give judges discretion over whether to give defendants (including those who have violated previous terms of supervised release) longer or shorter terms. The effect of subsection (h) is merely to build into the current system an incentive scheme for defendants not to violate the conditions of their supervised release near the end of their term. As noted above, Congress wanted to create this incentive system, see 137 Cong. Rec. S7769, 7772 (1991), and the Double Jeopardy Clause does not disturb this clearly stated legislative intent.
 
 
 22
 A final concern raised in the double jeopardy jurisprudence involves the reasonable expectations of the defendant. DiFrancesco, 449 U.S. at 138-39, 101 S.Ct. 426. So long as the legislature speaks directly so that criminal defendants are put on notice of the potential sentences they could receive, those expectations are not violated. Id. (concluding that re-sentencing dangerous special offenders after successful government appeal did not constitute a forbidden second punishment for the same offense where specifically authorized by Congress). In this case, the language of subsection (h), coupled with the legislative history, scholarly interpretation, and case law (specifically Cade), foreclosed any reasonable expectation that credit would be given for prior supervised release service.
 
 
 23
 We thus reject Pettus's arguments and hold that subsection (h) does not violate the Double Jeopardy Clause.
 
 Conclusion
 
 24
 For the reasons stated, we affirm the judgment of the district court.
 
 
 
 Notes:
 
 
 [1]
 Though appellant does not make this argument directly, we read his supplemental brief as challenging the district court's interpretation of § 3583(h), while primarily advancing the double jeopardy claim. The Legal Aid Society, invited to submit a brief asamicus curiae, thoroughly argued the statutory question.
 
 
 [2]
 The full text of § 3583(e)(3) reads:
 The Court may ... revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to the revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years if such offense is a class C or D felony, or more than one year in any other case.
 
 
 [3]
 The Supreme Court later clarified that subsection (e)(3) did allow courts to impose renewed supervised release following the revocation of a term of supervised releaseJohnson v. United States, 529 U.S. 694, 712, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000).
 
 
 [4]
 The proposed changes to § 3583 passed both Houses during the 102nd Congress but were not signed into lawSee 139 Cong. Rec. S2150 (1993). Senator Thurmond introduced the exact same revisions in the 103rd Congress, id., and they were added to the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103-322, 108 Stat. 1796, § 110505. It is fair to assume that the legislative intent did not change over the four years between introduction and passage.