18-2225-cr
*United States vs. Mingo*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

AUGUST TERM 2019

(Argued: January 29, 2020      Decided: July 8, 2020)
Docket No. 18-2225-cr

UNITED STATES OF AMERICA,
*Appellee,*

v.

WILLIAM MINGO,
*Defendant-Appellant.*

BEFORE: CABRANES, SACK, AND LOHIER, *Circuit Judges.*

Defendant-Appellant William Mingo appeals his July 25th, 2018, judgment of conviction in the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*) for failure to register under the Sex Offender Registration and Notification Act ("SORNA") 18 U.S.C. § 2250; 34 U.S.C. § 20911 *et seq.* On appeal, Mingo argues that his motion to dismiss the indictment should have been granted because (1) SORNA violates the constitutional non-delegation doctrine by authorizing the Secretary of Defense to designate which military

1

offenses constitute "sex offenses" under the statute; and (2) the Secretary's designation of sex offenses under SORNA violated the Administrative Procedure Act. For substantially the same reasons clearly enunciated by the district court, we disagree with Mingo and therefore

**AFFIRM.**

NATHAN REHN (Daniel B. Tehrani, *on the brief*), Assistant United States Attorneys *for* Audrey Strauss, United States Attorney for the Southern District of New York, NY, *for Appellee*.

ALLEGRA GLASHAUSSER, Federal Defenders of New York, Inc., New York, NY, *for Defendant-Appellant.*

SACK, *Circuit Judge*:

Defendant-Appellant William Mingo appeals his July 25th, 2018, judgment of conviction for failure to register under the Sex Offender Registration and Notification Act ("SORNA"), *see* Pub. L. No. 109-248, 120 Stat. 590 (2006) (codified at 18 U.S.C. § 2250 and 34 U.S.C. § 20901 *et seq.*), in the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*).

On October 26, 2017, by motion in the district court, Mingo asserted essentially two challenges to the application of SORNA to him in this case: (1) that SORNA's delegation to the Secretary of Defense (the "Secretary") in 34 U.S.C.

§ 20911(5)(A)(iv)[1] of the authority to designate the military offense of which he was convicted as a "sex offense" violated the constitutional non-delegation doctrine; and (2) that the Secretary, by designating Mingo's military offense as a "sex offense" for the purposes of SORNA, violated the Administrative Procedure Act, 5 U.S.C. §§ 500 *et seq.* (the "APA"). The district court denied the motion in its entirety. Order Denying Defendant's Motion to Dismiss the Indictment, *United States v. Mingo*, No. 16 Cr. 597 (S.D.N.Y. Nov. 30, 2017) (hereinafter, "Order of Nov. 30").

## BACKGROUND

The following facts, drawn from the record on appeal as supplemented by the Order of Nov. 30, are undisputed.

### A. The Offense Conduct

In January 2005, Mingo enlisted in the United States Army. *See* Sealed Complaint at 2, *United States v. Mingo*, No. 16 Cr. 597 (S.D.N.Y. Aug. 25, 2016) (the "Complaint"). The following year, he was convicted by court martial in the Military District of Washington of, *inter alia*, one count of rape of another member

---

[1] Section 20911(5)(A) states that "the term 'sex offense' means … (iv) a military offense specified by the Secretary of Defense under section 115(a)(8)(C)(i) of Public Law 105-119 (10 U.S.C. 951 note)."

of his platoon in violation of Article 120 of the Uniform Code of Military Justice. Order of Nov. 30 at 1. He was sentenced principally to 30 months' confinement and was discharged from military service in September 2008. *See id.*

Following his release from military custody, the State of New York designated Mingo as a Level Two sex offender. *See id.* at 1-2. In 2009, he signed the New York City Police Department's Sex Offender Rules and Regulations to acknowledge his duties as a registered sex offender. *See id.* at 2. He was required thereunder to register annually and to notify the New York Department of Criminal Justice Services of any change to his address within ten days of any change of residence. *See id.*

In 2010, Mingo registered as a sex offender. *See id.* He failed, however, to update his registration thereafter. *See id.* In 2012, Mingo moved from the Bronx, New York, to Brooklyn, New York, without notifying the Department. *See* Complaint at 3, 5. And on September 7, 2016, a grand jury in the United States District Court for the Southern District of New York returned an indictment charging him with failure to register under the provisions of SORNA codified at 18 U.S.C. § 2250.[2] *See* Order of Nov. 30 at 1.

---

[2] Section 2250 states in relevant part, "(a) In general.—Whoever—

## B. Procedural History

As noted above, by motion to dismiss the indictment dated October 26, 2017, the defendant challenged the validity of the requirements of SORNA under which he had been indicted. On November 30, 2017, the district court denied the motion. *See* Order of Nov. 30. In so doing, it identified the first issue before it as "whether th[e] provision of SORNA [in issue] provides an intelligible principle to the Secretary in deciding which military offenses trigger registration requirements." *Id.* at 7. The court answered that question in the affirmative and "h[e]ld that SORNA provides such an intelligible principle." *Id.* The court identified the second issue before it as whether "Enclosure 27," the document in which the Secretary has designated the list of military offenses that are sex offenses for purposes of SORNA, "must be set aside because [the Secretary] did not engage in

---

(1) is required to register under the Sex Offender Registration and Notification Act;

(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; … [and]

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both."

5

notice and comment rulemaking in accordance with § 553 of the APA." *Id.* No, the court concluded. Because the "defendant [had been] convicted by court-martial in a military tribunal" and "served his sentence in a military facility," his conviction was "part and parcel of the military justice system." *Id.* at 9. The Secretary's designation of this and other military offenses as sex offenses, the court reasoned, thus "falls within the military affairs exception" to the APA's notice-and-comment requirements. *Id.* at 9.

On December 14, 2017, the defendant pleaded guilty to a single count of violating SORNA, pursuant to a plea agreement reserving his right to appeal the district court's order denying his motion to dismiss the indictment. A judgment of conviction was entered on July 25, 2018. The defendant was sentenced to a term of time served[3] followed by five years' supervised release. This appeal followed.

**DISCUSSION**

**A. 34 U.S.C. § 20911(5)(A)(iv)'s Delegation to the Secretary of Defense Does Not Violate the Non-Delegation Doctrine**

Article I of the U.S. Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. CONST.

---

[3] At the time of his sentencing, the defendant had served three and one-half months in prison.

6

art. I, § 1. "Congress [therefore] generally cannot delegate its legislative power to another branch." *Mistretta v. United States*, 488 U.S. 361, 372 (1989); *accord Gundy v. United States*, 139 S. Ct. 2116, 2121 (2019) (plurality opinion of Kagan, J.) ("The nondelegation doctrine bars Congress from transferring its legislative power to another branch of Government." ).

The defendant argues that SORNA § 20911(5)(A)(iv), which, again, allows the Secretary to specify what military offenses constitute sex offenses covered by SORNA, violates the non-delegation doctrine by delegating legislative authority to the Secretary. That section provides, in relevant part, that "the term 'sex offense' means . . . a military offense specified by the Secretary of Defense." 34 U.S.C. § 20911(5)(A)(iv). We review this challenge to the statute's constitutionality *de novo. See United States v. Pettus*, 303 F.3d 480, 483 (2d Cir. 2002).

Although the non-delegation doctrine limits Congress' authority to delegate its law-making function, Congress may nonetheless "obtain[] the assistance of its coordinate Branches." *Mistretta*¸ 488 U.S. at 372. The assistance is permissible if it is guided by an "intelligible principle to which the person or body authorized to [exercise delegated authority] is directed to conform." *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 406 (1927). This "intelligible principle" test requires that

"Congress clearly delineates the policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946).

SORNA § 20911(5)(A)(iv) grants the Secretary the authority to identify "sex offenses" triggering SORNA's registration requirements. As noted by the district court, though, this authority has "numerous limitations." Order of Nov. 30 at 4-5. First, the term 'sex offense' in § 20911(5)(A) has a plain-language meaning that itself limits the Secretary's discretion." *See* Order of Nov. 30 at 5. And subdivision 20911(5)(A) defines the term "sex offense" to include "a criminal offense that has an element involving a sexual act or sexual contact with another." 34 U.S.C. § 20911(5)(A)(i). This parallel definition provides clear guidance as to the kind of military offenses that are sex offenses: those, like their analogous criminal offenses, that have "an element involving a sexual act or sexual contact with another." Second, the Secretary's discretion is limited by the statute's "Declaration of purpose," which provides that SORNA is intended to "protect the public from sex offenders and offenders against children" and to "respon[d] to the vicious attacks by violent predators against [specifically identified] victims." 34 U.S.C. § 20901. In view of these limitations, we conclude that the Secretary's discretion in

8

designating certain military offenses as sex offenses under § 20911(5)(A)(iv) has been clearly and intelligibly limited by Congress.

It is worth noting, as the district court did, that the Supreme Court has found a statute to violate the non-delegation doctrine for lack of an intelligible principle only twice, each more than 85 years ago. *See* Order of Nov. 30 at 5 citing *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935), and *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935). In those cases, as the district court pointed out, the statute in question was declared unconstitutional because it either contained an overbroad delegation of authority or lacked guidance regarding the exercise of discretion. *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474 (2001). Neither is so in the matter before us.

As the district court also correctly observed, "the fact that the delegation here involves a criminal offense does not alter th[e] conclusion" that the delegation of authority in § 20911(5)(A)(iv) is permissible. Order of Nov. 30 at 6.

> The Supreme Court has held that "[t]here is no absolute rule . . . against Congress' delegation of authority to define criminal punishments." *Loving v. United States*, 517 U.S. 748, 768 (1996). The Court has consistently "upheld delegations whereby the Executive or an independent agency defines by regulation what conduct will be criminal, so long as Congress makes the violation of regulations a criminal offense and fixes the punishment, and the regulations 'confin[e] themselves within the field covered by the statute.'" *Id.*

9

(quoting *United States v. Grimaud*, 220 U.S. 506, 518 (1911)). That is precisely what occurred here.

*Id.* (brackets in original).

In the case at bar, again as the district court correctly stated:

> Through SORNA, Congress has made it a criminal offense to fail to register as a sex offender and identified the elements necessary to sustain such a conviction. *See* 18 U.S.C. § 2250. Congress also determined when offenders must register, 34 U.S.C. § 20913(b), how they must do so, 34 U.S.C. § 20913(b)-(c), and what information individuals must provide, 34 U.S.C. § 20914. Moreover, Congress defined the elements of defendant's underlying rape conviction under the Uniform Code of Military Justice, codified at 10 U.S.C. § 920. The only issue that Congress delegated to the Secretary is which particular military offenses should qualify as a "sex offense" under § 20911(5)(A)(iv).

*Id.* at 6.

This is the very antithesis of a lack of intelligible principles. The Secretary's designation of the military offense of which the defendant was convicted as a "sex offense" for the purposes of SORNA cannot on that basis be deemed an unconstitutional delegation of legislative power.[4]

---

[4] In light of this conclusion, we need not address the government's alternative argument – rejected by the district court – that the defendant's underlying offense would have required him to register under a separate provision of SORNA: 34 U.S.C. § 20911(5)(A)(i). *See* Order of Nov. 30 at 3.

Finally, as the district court observed, it is worth noting that "although this case [of delegation to the Secretary] is one of first impression, the Second Circuit has upheld other delegations of lawmaking authority within SORNA itself. *See* [*United States v.*] *Guzman*, 591 F.3d [83,] 91 [2010] (concluding that granting the Attorney General the authority to determine whether SORNA's registration requirements would apply retroactively did not violate the nondelegation doctrine)."

On June 20, 2019, after the defendant had submitted his opening brief to this Court, the Supreme Court decided *Gundy v. United States*, 139 S. Ct. 2116 (2019). There, the Court affirmed the judgment of this Court in *United States v. Gundy*, 695 Fed. App'x 639 (2d Cir. 2017) (summary order) and in so doing held that 18 U.S.C. § 20913(d)[5] does not unconstitutionally delegate legislative power to the Attorney General. Four members of the Court agreed with this Court and

---

[5] 18 U.S.C. § 20913(d) provides:

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) [which governs "initial registration" as a sex offender].

11

"every other court . . . to consider the issue," *Gundy*, 139 S. Ct. at 2122 (plurality opinion of Kagan, J.), that this delegation to the Attorney General "easily passes constitutional muster," *id.* at 2121. Justice Alito cast the fifth and deciding vote, concurring in the judgment. He expressed his willingness to reconsider the non-delegation doctrine in a future case, but nonetheless agreed that the delegation in this case "is adequate under the approach th[e] [Supreme] Court has taken for many years." *Id.* at 2131 (Alito, J., concurring).[6] The Court's decision in *Gundy* to uphold another delegation in SORNA under the intelligible principle test militates against the defendant's first argument that § 20911(5)(A)(iv) impermissibly violates the non-delegation doctrine.[7]

## B. The Secretary of Defense Did Not Violate the APA in Designating Military Offenses as Sex Offenses Under SORNA

The district court also decided that the Secretary did not, as the defendant argued, violate the APA in designating the military offenses that constitute sex offenses. As noted, the Secretary made these designations in a document referred

---

[6] Justice Kavanaugh did not participate.

[7] Gundy's petition for rehearing was denied by the Supreme Court on November 25, 2019. *Gundy v. United States*, 140 S. Ct. 579 (2019) (Mem.).

to as "Enclosure 27."[8]  Enclosure 27 lists rape convictions under Article 120 of the Uniform Code of Military Justice – of which the defendant was convicted – as "sex offenses" triggering SORNA's registration requirements.[9]  In so doing, the Secretary did not follow the APA's notice-and-comment procedures provided in 5 U.S.C. § 553.  The defendant argues that the Secretary violated the APA by failing to do so, and that he is therefore not subject to the registration requirements of SORNA.[10]

Under the APA, an agency promulgating a rule ordinarily must provide both public notice of the proposed rulemaking in the Federal Register and an opportunity for public comment before adopting it.[11]  *See* 5 U.S.C. § 553(b), (c).

---

[8] *See* Dep't of Defense Instruction No. 1325.7, Enclosure 27 (2001).

[9] *See id.*

[10]  The district court rejected the government's alternative argument "that Enclosure 27 is [an] interpretive [rule], and therefore exempt from notice and comment by 5 U.S.C. § 553(b)(A)."  Order of Nov. 30 at 8.  We need not consider that argument in light of our affirmance on other grounds.

[11] As to the latter, § 553 provides in pertinent part, "(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. . . ."  *See also Zhang v. Slattery*, 55 F.3d 732, 744 (2d Cir. 1995) (remarking that § 553 requires that agency rules "must be subject to a notice-and-comment period before taking effect").

Although we have noted that "exceptions to section 553 should be narrowly construed and only reluctantly countenanced," *City of New York v. Permanent Mission of India to United Nations*, 618 F.3d 172, 201 (2d Cir. 2010) (internal quotation marks and brackets omitted), the first subdivision of § 553 states that "[t]his section applies . . . except to the extent that there is involved . . . a military or foreign affairs function of the United States." 5 U.S.C. § 553(a)(1). As the Supreme Court has explained, the "need for special regulations in relation to military discipline, and the consequent need and justification for a special and exclusive system of military justice, is too obvious to require extensive discussion; no military organization can function without strict discipline and regulation that would be unacceptable in a civilian setting." *Chappell v. Wallace*, 462 U.S. 296, 300 (1983); *see also Rajah v. Mukasey*, 544 F.3d 427, 436-38 (2d Cir. 2008) (commenting on the statutory exception as applied to foreign affairs).

We agree with the district court's determination that the Secretary's designation of military offenses as sex offenses in Enclosure 27 fell within the military affairs exception. The defendant "was convicted by court-martial in a military tribunal and he served his sentence in a military facility. His conviction in the military tribunal [of raping a member of his platoon] was therefore part and

14

parcel of the military justice system." Order of Nov. 30 at 9. The applicability of the exception to § 553's notice-and-comment requirement for involvement of a "military function . . . of the United States" is thus clear and conclusive.[12]

## II. CONCLUSION

We have considered the remainder of the Appellant's arguments on appeal and conclude that they are without merit. We therefore AFFIRM the judgment of the district court.

---

[12] The defendant cites in support of his argument on this point *Independent Guard Ass'n of Nevada*, 57 F.3d 766, as amended, 69 F.3d 1038 (9th Cir. 1995). There, the Ninth Circuit held that the military function exception did not apply to a personnel regulation governing civilian security guards at a Department of Energy-administered nuclear research facility. But there, the court concluded, the civilian contract security personnel who were "employed and supervised by [a privately owned security firm] were performing duties similar to those performed by civilian security guards everywhere. They were no more performing a 'military function' than civilian contract guards employed to guard judges are performing a 'judicial function.'" *Id.* at 770. The decision thus does not address the issues, nor support the defendant's position, here.