# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 8, 2022        Decided August 16, 2022

No. 20-3080

UNITED STATES OF AMERICA,
APPELLEE

v.

MARK WAYNE RUSSELL,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cr-00176-1)

*Tony Axam, Jr.*, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs was *A.J. Kramer*, Federal Public Defender.

*Eric Hansford*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Chrisellen R. Kolb* and *Elizabeth H. Danello*, Assistant U.S. Attorneys.

Before: ROGERS, WALKER and JACKSON,[*] *Circuit Judges*.

---

[*] Circuit Judge, now Justice, Jackson was a member of the panel at the time the case was argued but did not participate in this opinion.

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*: Mark Russell has been convicted of two child-sex crimes. First, in 2006, he pleaded guilty in the United States District Court for the District of Columbia to Travel with Intent to Engage in Illicit Sexual Conduct under 18 U.S.C. § 2423(b). Then, in 2020, while on supervised release for that offense, he engaged in similar conduct and was later convicted in Maryland state court for Sexual Solicitation of a Minor.

After his second conviction, the United States District Court revoked Russell's supervised release for his first conviction and sentenced him to three years in prison — to run consecutive to his Maryland sentence — followed by a new term of supervised release.

This appeal concerns two aspects of Russell's new term of supervised release.

First, Russell says that the district court erred when it required GPS monitoring for the first two years of his new term. Because that requirement falls within the district court's wide discretion to impose conditions on supervised release, we will not disturb it.

Second, regarding the length of Russell's new term of supervised release, Russell sees a contradiction between the district court's oral pronouncement and its written judgment. Because that oral pronouncement was ambiguous, we remand for clarification.

I

Background

In 2006, the police caught Mark Russell in a sting operation. When Russell traveled across state lines to a residence in Washington, D.C., where he had arranged to have sex with a thirteen-year-old girl, the police were waiting. The "girl" had been an undercover police officer. Russell later pleaded guilty in the United States District Court for the District of Columbia to one count of Travel with Intent to Engage in Illicit Sexual Conduct under 18 U.S.C. § 2423(b).[1]

The district court sentenced Russell to three years and ten months in prison. It also imposed a thirty-year term of supervised release. As a mandatory condition of his supervised release, Russell was required not to commit another crime.

In 2020, while on supervised release, Russell was arrested and convicted in Maryland state court for Sexual Solicitation of a Minor.

That led the United States District Court to revoke Russell's supervised release for his 2006 conviction. It sentenced him to three years in prison, to run consecutive to his Maryland sentence, followed by a new term of supervised release. It said, "I will place him on supervised release for a

---

[1] "Travel With Intent To Engage in Illicit Sexual Conduct.—A person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, with a motivating purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both." 18 U.S.C. § 2423(b).

period of 30 years. Obviously he's given credit for the time he's already been on supervised release." A 38:10-12.

The district court put mandatory, standard, and special conditions on Russell's new term of supervised release. Russell will be required to stay registered as a sex offender and submit to polygraphs. He will also need to obtain authorization before contacting minors, using a computer, selecting a residence, or traveling outside his judicial district.

In addition, over Russell's objection, the district court required GPS location monitoring for the first two years of his supervised release. That means Russell will wear an electronic ankle bracelet twenty-four hours a day.

In overruling Russell's objection, the district court connected the monitoring of Russell's travel to the travel that had facilitated his previous crimes: "So obviously there's *movement* on his part for the purpose of engaging in this type of reprehensible behavior." A 44:15-16 (emphasis added). It noted the limits of the monitoring's restriction on his liberty: "as long as he's having interaction with adults there's no prohibition or no restriction on his movement." A 44:21-23. And it explained why this restriction on his liberty was necessary: "probation and the Court need[] to know what his movement is in order to ensure to the best of our capability since no one can be with him physically 24/7 that he's not potentially putting children at risk." A 45:2-5.

Later, the court issued its written judgment. For the term of supervised release, the judgment says "THIRTY (30) YEARS." A 22.

Russell now appeals. He argues that the district court erred when it made GPS monitoring a condition of his supervised

release. He also asks us to order the district court to align the term of supervised release in its written judgment (thirty years) with the term that Russell believes the district court pronounced at his revocation hearing.

## II
## GPS Location Monitoring

Congress requires that a condition of supervised release be "reasonably related to the" nature and circumstances of the defendant's offense, his characteristics and history, the need to deter criminal conduct and protect the public, and the needed correctional treatment. 18 U.S.C. § 3583(d)(1). The condition must also "involve[] no greater deprivation of liberty than is reasonably necessary" to achieve deterrence, protection, and correctional treatment. *Id.* § (d)(2).[2]

"Sentencing judges, although constrained by these statutory limits, are nonetheless afforded wide discretion when imposing terms and conditions of supervised release, and we review the imposition of supervised release conditions only for abuse of that discretion." *United States v. Legg*, 713 F.3d 1129, 1131 (D.C. Cir. 2013) (cleaned up).

## A
## Reasonably Related

For four reasons, GPS monitoring is "reasonably related to" Russell's offense, his characteristics and history,

---

[2] In addition, Congress requires a condition of supervised release to be "consistent with any pertinent policy statements issued by the Sentencing Commission." *Id.* § (d)(3). But in this case, Russell does not argue that his supervised release is inconsistent with those policy statements, so we do not discuss that statutory requirement.

deterrence, protection of the public, and correctional treatment. 18 U.S.C. § 3583(d)(1).

First, GPS monitoring is related to enforcing other conditions of Russell's supervised release — which are themselves related to the § 3583(d)(1) factors. Those conditions require him to obtain authorization before he can travel outside his judicial district, contact minors, or use a computer. By monitoring his movement, his probation officer will know if he is in another district, is hanging around a playground, or is visiting an internet café — to give just three of many possible destinations that would raise red flags.

Second, GPS monitoring is directly related to deterring Russell and protecting the public. As explained above, it will detect unauthorized travel and other activities that endanger children. Equally important, it will discourage recidivism because Russell can expect to be incriminated with "incontestable evidence that he was at the place where and at the time when a sexual offense was reported to have occurred" if he sexually abuses a child who reports his crime. *Belleau v. Wall*, 811 F.3d 929, 938 (7th Cir. 2016).

True, GPS monitoring will not provide the public with perfect protection. But perfection is not the standard. Just as a prohibition against a drug-dealer's return to his old selling site is reasonably related to deterring him from selling more drugs (even if it does not stop him from finding new places to sell drugs) so too is GPS monitoring reasonably related to deterring Russell from traveling again to meet children for sex (even if it does not stop him from finding new ways to prey on children). *See United States v. Hunt*, 843 F.3d 1022, 1030-32 (D.C. Cir. 2016) (affirming a prohibition on a drug-dealer visiting the location of his past drug-dealing).

Third, unlike monitoring the travel of many other individuals on supervised release, GPS monitoring of Russell's travel is related to a jurisdictional component — travel — of Russell's underlying offense, "Travel With Intent To Engage in Illicit Sexual Conduct." 18 U.S.C. § 2423(b). Indeed, there are few underlying offenses for which GPS monitoring could be more closely related. If Russell had not engaged in interstate travel — travel that will now be monitored through GPS — he would not have been guilty of his underlying offense.

Fourth and finally, GPS monitoring is also related to Russell's later child-sex crime in Maryland. Although travel was not a jurisdictional component there, Russell's crime would have been impossible without it. That is precisely what the district court identified when it imposed a condition of GPS monitoring: "So obviously there's *movement* on his part for the purpose of engaging in this type of reprehensible behavior. And again, I think under the circumstances probation needs to know what his whereabouts are." A 44:15-18 (emphasis added).

## B
## No Greater Deprivation of Liberty Than Is Reasonably Necessary

GPS monitoring is not a "greater deprivation of liberty than is reasonably necessary" to deter Russell, protect the public, and provide Russell correctional treatment. 18 U.S.C. § 3583(d)(2).

Consider first that, as the district court said, GPS monitoring imposes "no prohibition or no restriction on his movement" when Russell is "having interaction with adults." A 44:21-23. To be sure, wearing an ankle bracelet is sometimes uncomfortable and inconvenient. And the Supreme

Court has held that GPS monitoring can be an intrusion into the privacy of ordinary citizens. *See Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018); *United States v. Jones*, 565 U.S. 400, 404 (2012). But Russell does not have a typical "expectation of privacy that society would recognize as legitimate." *Samson v. California*, 547 U.S. 843, 852 (2006). Instead, "persons subject to supervised release have significantly diminished expectations of privacy." *United States v. Lambus*, 897 F.3d 368, 402 (2d Cir. 2018) (cleaned up). Russell must, for example, allow warrantless searches of his home and other property in certain circumstances. He makes no objection here to those searches — or to other conditions of his supervised release that limit his liberty to travel, use a computer, own a gun, contact children, reside where he wishes, or refuse a polygraph.

Now consider the significant deterrent effects of monitoring Russell's travel. As explained above, GPS monitoring can deter criminal conduct by making a defendant "aware that he is being monitored and is likely therefore to be apprehended should a sex crime be reported at a time, and a location, at which he is present." *Belleau*, 811 F.3d at 935.

Next consider the vital importance of protecting children from sexual predators. As the district court said, conduct like Russell's "destroys children's lives." A 36:15; *see also United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010) ("Had the 'child' been an actual minor and had Russell proceeded to have sex with her, the harm would have been great.").

Finally, consider the odds that Russell will sexually abuse children if he is not closely supervised. In this case's underlying offense, he arrived with two condoms at what he believed was the home of a thirteen-year-old girl, after sending her a real-time video of himself masturbating and then telling

her that he would wear the condoms so she would not get pregnant. A 12-13. And after serving his sentence for that crime — despite being "under extensive monitoring," though notably not under GPS monitoring — Russell did it all over again. A 32:7-8.

Based on those considerations, we hold that the district court did not abuse its wide discretion when it concluded that two years of GPS monitoring was "reasonably necessary." 18 U.S.C. § 3583(d)(2). GPS monitoring's potential to protect children — from a serial child-sex predator who will otherwise be better able to sexually assault children — outweighs the effect of that monitoring on Russell's liberty. *See United States v. Malenya*, 736 F.3d 554, 559 (D.C. Cir. 2013) (we "weigh the consequences for the defendant's liberty against any likely achievement of the statutory purposes").

To hold otherwise would make this Court an outlier, as appellate courts have repeatedly affirmed decisions to condition a child-sex offender's supervised release on GPS monitoring. And they have done so even when the need to track travel is less obvious than here. Unlike Russell's underlying offense — Travel with Intent to Engage in Illicit Sexual Conduct — other child-sex crimes such as possession of child pornography do not require perpetrators to leave their homes; nevertheless, GPS or location monitoring can be a condition of supervised release for those convicted of such crimes. *See, e.g.*, *United States v. Musso*, 643 F.3d 566, 569-70 (7th Cir. 2011); *United States v. Johnson*, 773 F.3d 905 (8th Cir. 2014); *United States v. Brown*, 821 F. App'x 902 (9th Cir. 2020). And even outside the context of child-sex crimes, "[c]ourts routinely rely on GPS technology to supervise individuals on probation or supervised release." *United States v. Brooks*, 715 F.3d 1069, 1078 (8th Cir. 2013).

III
Term of Supervised Release

At Russell's revocation hearing, the district court said, "I will place him on supervised release for a period of 30 years." A 38:10-11. It then added, seemingly as an aside, "Obviously he's given credit for the time he's already been on supervised release." A 38:11-12. Then, the district court issued a written judgment providing that Russell's term of supervised release is "THIRTY (30) YEARS." A 22.

Because the district court's oral pronouncement of a sentence controls over a written judgment, and because the district court's aside at the revocation hearing created ambiguity about the length of Russell's new term of supervised release, we remand for the district court to clarify it. *See Kennedy v. Reid*, 249 F.2d 492, 495 (D.C. Cir. 1957) (a district court's oral "pronouncement of sentence constitutes the judgment of the court"); *United States v. Booker*, 436 F.3d 238, 245 (D.C. Cir. 2006) (a written judgment cannot change the previously pronounced sentence).

Russell asks for more. He wants us to order a sentence of less than thirty years by discerning an intention of the district court to award Russell a time-served credit for his earlier years on supervised release. But when the district court said that "[o]bviously he's given credit for the time he's already been on supervised release," the court did not explain what authority "[o]bviously" guarantees it. A 38:11-12. Nor has Russell demonstrated that crediting him for time served is "[o]bvious[]" or even common. Indeed — though we need not decide the question today — it is possible that Congress

prohibits crediting a defendant's previous time on supervised release toward a new term of supervised release.[3]

In light of that context, we cannot be certain that the district court — in its oral pronouncement — intended to credit Russell's first term of supervised release toward his new term. Nor is it clear that the district court's written judgment contradicted, rather than clarified, its ambiguous oral pronouncement. *Cf. United States v. Love*, 593 F.3d 1, 9 (D.C. Cir. 2010) (a written judgment can "clarif[y]—rather than contradict[]—the oral pronouncement of the sentence").

Rather than accepting Russell's invitation for us to divine the intent of the district court — and discover a contradiction between its oral pronouncement and written judgment where none may exist — we will remand for clarification.

---

[3] *See* 18 U.S.C. § 3583(h) ("When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release."); *United States v. Pla*, 345 F.3d 1312, 1314 (11th Cir. 2003) ("[B]y explicitly stating that credit shall only be given for time served in prison post revocation, congressional intent was to foreclose any other type of credit. This silence is also consistent with subsection (e)(3), which also forecloses credit for time previously served on supervised release. This decision is consistent with our sister circuits." (citing *United States v. Pettus*, 303 F.3d 480, 484-85 (2d Cir. 2002); *United States v. Cade*, 236 F.3d 463, 467 (9th Cir. 2000)); *cf.* 18 U.S.C. § 3583(e)(3).

12

\* \* \*

We affirm the district court's decision to require GPS monitoring for the first two years of Russell's new term of supervised release, and we remand for the district court to clarify the length of that term.

*So ordered.*