**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

──────────────

**No. 21-4093**

──────────────

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

   v.

ROBERT DALE ELLIS,

        Defendant - Appellant.

──────────────

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Martin K. Reidinger, Chief District Judge.  (1:15-cr-00016-MR-WCM-1)

──────────────

Argued:  May 8, 2024                     Decided:  August 14, 2024

──────────────

Before GREGORY and QUATTLEBAUM, Circuit Judges, and FLOYD, Senior Circuit Judge.

──────────────

Affirmed by published opinion. Judge Quattlebaum wrote the opinion in which Judge Floyd joined.  Judge Gregory wrote a dissenting opinion.

──────────────

**ARGUED:**  Melissa Susanne Baldwin, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant.  Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:**  Anthony Martinez, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  William T. Stetzer, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

──────────────

QUATTLEBAUM, Circuit Judge:

Following state law convictions involving child pornography, Robert Dale Ellis failed to register as a sex offender. That failure led to a subsequent federal conviction, which in turn led to a term of imprisonment and a term of supervised release. Almost immediately after completing his prison sentence, Ellis began violating his conditions of supervised release. As a result, the district court revoked his supervised release and imposed another prison term along with new supervised release conditions. And that sequence of events has repeated itself over and over—four times to be precise.

On appeal, Ellis challenges two special conditions imposed during the latest iteration. First, he contends that a condition requiring a probation officer's approval before using internet-capable devices for non-employment purposes improperly delegates judicial power, inappropriately represents a complete ban on the internet and, even if not a complete ban, is overbroad. Second, he argues that a condition requiring six months of location monitoring is not reasonably related to his sentencing factors and involves a greater deprivation of liberty than is reasonably necessary.

We disagree. Permitting the probation office to approve internet-accessible devices for non-employment purposes, like other special conditions subject to a probation officer's approval, does not delegate a core judicial function. And the device-approval condition by its express terms is not a complete internet ban. Finally, Ellis' overbreadth challenges to that condition and the location-monitoring condition fail because the district court did not abuse its discretion in concluding that they are reasonably related to his sentencing factors

2

and do not involve a greater deprivation of liberty than is reasonably necessary. So we affirm the district court's judgment.

## I.

In 2005 and 2006, Ellis was convicted of possession of child pornography and its duplication or distribution under North Carolina law. These convictions required Ellis to register as a sex offender under the Sex Offender Registration and Notification Act (SORNA). But Ellis failed to register. As a result, a federal grand jury empaneled in the Middle District of North Carolina charged him in 2013 with violating SORNA. After Ellis pled guilty, the district court sentenced him to fifteen months' imprisonment and a five-year term of supervised release with conditions. Following imprisonment, Ellis began his original term of supervised release in June 2014, and jurisdiction over Ellis' supervised release was transferred to the Western District of North Carolina in January 2015. "Before long," he "began to run into difficulties complying with the conditions of his release." *United States v. Ellis*, 984 F.3d 1092, 1095 (4th Cir. 2021).

In February 2015, Ellis was pulled over by a highway patrolman as he was driving to Winston-Salem, North Carolina. This episode led to two violations of his supervised release conditions: one that prevented him from leaving the judicial district without receiving permission from the court or his probation officer and another that required he report any contact with law enforcement.

As a result of these violations, the district court, at probation's request but with Ellis' consent, modified his release conditions by adding two months of home detention with

3

location monitoring technology. But "before that term could be completed, the probation officer petitioned to terminate home detention because Mr. Ellis had become homeless." *Id.* The court then granted Ellis "permission to live with a friend for several months" in the Middle District of North Carolina. *Id.* at 1095–96.

Later, in July 2015, Ellis asked the district court to modify his conditions so he could return to the Western District in order to participate in a program that provided housing and employment opportunities to individuals returning to their communities after prison. The court granted that request but added a condition that he cooperatively participate in that reentry program until discharged. The next month, Ellis began residing at the reentry center. But the program soon discharged Ellis because he refused to comply with its rules and directives. With no place to live, Ellis moved from hotel to hotel using so-called "second chance funds" meant for emergency housing. *Id.* at 1096.

Ellis' violations did not stop there. For nearly a month in October 2015, the probation office lost contact with Ellis. He failed to contact his probation officer within the first five days of October as required by his supervised release conditions. And, despite the probation officer's outreach efforts, Ellis was not seen or heard from again until early November.

Then, just after that unexplained absence, on November 10, 2015, Ellis once again left the judicial district without permission of the court or his probation officer. Probation discovered this violation when police in Greensboro, North Carolina, stopped Ellis for soliciting money.

4

Later that month, the district court again modified Ellis' conditions, with his consent, to allow him another chance at participating in a local reentry program. But after beginning to participate in outpatient and mental health treatment, Ellis "called a crisis hotline and stated that he was thinking of harming himself." *Id.* This incident resulted in his discharge from the reentry program, as the director found that the program "was inadequate to meet [his] mental health needs." *Id.* He was then admitted to an in-patient facility for observation.

In January 2016, because Ellis was a registered sex offender who lacked a stable address, the probation office requested that he be placed on GPS location monitoring to ensure his whereabouts were known to his probation officer. With Ellis' consent, the court modified his conditions to include a location-monitoring condition for six months. In addition, Ellis disregarded the condition that he follow mental health and sex offender treatment requirements by repeatedly failing to show up to mental health and sex offender treatment appointments.

Because of these admitted violations, in August 2016, the probation office petitioned the district court to revoke Ellis' supervised release. At the hearing that followed, Ellis requested a short, five-month prison sentence, arguing that he needed treatment that was unavailable in prison. The government resisted such a short sentence, countering that the district court had modified the release conditions, at Ellis' request, to facilitate mental health and sex offender treatment. The government added that, twice already, Ellis had been kicked out of treatment programs for failing to abide by their rules. The district court granted the petition and ordered Ellis to be imprisoned for ten months, followed by a

supervised release term of five years. Included as part of Ellis' supervised release was a device-approval condition, stating that he "shall not use, purchase, possess, procure, or otherwise obtain any computer or electronic device that can be linked to any computer network, bulletin board, Internet Service Provider, or exchange format involving computers unless approved by the United States probation officer." J.A. 65. Ellis did not object to these conditions.

Once released from this prison term, the pattern continued. In February 2018, the probation office petitioned the district court for a second time to revoke Ellis' supervised release. This time, Ellis admitted violating a condition that required him to comply with sex offender risk assessment and testing and a condition that prevented him from using internet-accessible devices unless approved by probation. At the revocation hearing, Ellis admitted that he had lied about viewing pornography during a polygraph test. After learning that he failed the test, he admitted to "daily pornography use" on unapproved internet-accessible devices. *Ellis*, 984 F.3d at 1096 n.2. Despite these admissions, Ellis once more sought a low sentence. He claimed that he had made progress since his first revocation hearing by not missing treatment appointments as he had before. He also pointed out his mental health challenges based on childhood trauma and gender identity issues. And while admitting that he used an unapproved device to view pornography daily, he pointed out the government offered no proof of him viewing child pornography. For these reasons, Ellis requested a seven-month prison term.

The government sought a longer term. It argued that the prior term did not dissuade Ellis from continuing to violate his conditions. And it countered that because Ellis used an

6

unauthorized device, exactly what he had been viewing could not be known. The government also emphasized Ellis' lying about those devices and viewing pornography on them. On top of seeking a longer prison term, the government also argued for the continuation of several conditions: restriction on the use of internet-accessible devices unless approved by the probation office, location monitoring for twelve months, compliance with treatment program requirements and restriction on traveling outside the judicial district without permission. In addition, the government sought two new conditions: that Ellis "have no Internet access" (in other words, a complete internet ban) and that he not possess any pornography or enter locations where it could be viewed or accessed. J.A. 79.

Ellis objected to these requested conditions, arguing that they were too restrictive. He explained that they would prevent him from seeking employment and going into places like libraries, which have computers, and convenience stores, which have pornographic magazines. Ellis also argued that the internet restriction would interfere with his efforts to gain employment. Last, he argued against any location monitoring or, in the alternative, for a shorter period based on the lack of location-related violations since the first revocation sentence.

After considering the parties' arguments, the district court granted probation's petition, sentencing Ellis to nine months' imprisonment and a new five-year term of supervised release. The court rejected the government's requests for a complete internet ban and for a prohibition on entering locations where pornography could be accessed, opting instead for less drastic conditions. It ordered that Ellis not access, view or possess

7

any legal or illegal pornographic materials, and it once again imposed, without objection, the device-approval condition, requiring the probation officer's approval before Ellis could use an internet-capable electronic device. Also, over Ellis' objection, the court-imposed location monitoring for up to twelve months. In explaining this revocation sentence, the court stated that it was the court's practice to increase penalties "when there are successive violations of supervised release" based on the court's statutory requirement to fashion a sentence that affords adequate deterrence. J.A. 88. In particular, the court stated that Ellis' "violations still show that [he] was deceptive, that he was using Internet accessible devices that were not approved and thwart the treatment that is necessary under the circumstances, and lied about the pornography use." J.A. 89. It also advised Ellis that he could seek a modification to reduce the time of the location monitoring based on his behavior.

Ellis' behavior did not warrant such a reduction. In fact, during his first month of supervised release, he let his GPS battery die, even after receiving instructions on how to keep it charged. Then, after a verbal warning, he let the battery die two more times. What's more, Ellis lied about the third episode. He said he could not keep the GPS battery charged while at work, even though he was at home when the battery died. Ellis also left the judicial district in violation of his conditions, traveling to South Carolina without permission. And he violated the conditions requiring compliance with his treatment programs. He refused to give historical and personal information required for his sex offender treatment. And he failed to attend the biweekly sessions recommended by his mental health counselor.

Because of these violations, in January 2019, the probation office petitioned the court to revoke Ellis' supervised release for a third time. At the revocation hearing, Ellis

advanced a new argument. Rather than debating the specifics of a revocation sentence and new supervised release conditions, he argued for no supervised release *at all*. Ellis argued that he had now spent more time in prison for violating release conditions than the total length of his original, underlying sentence. And he emphasized that he had not committed any new crimes. Counsel argued that "there's really nothing left for probation to give" Ellis and that the conditions were creating "obstacles" and "hoops" for him to jump through. J.A. 108. Counsel added that "supervised release is no longer necessary to protect the public" from Ellis. J.A. 109. In response, the government maintained that Ellis' continued inability to comply with the conditions justified a revocation sentence at the high end of the guidelines and another term of supervised release.

The court granted the petition and sentenced Ellis to eleven months in prison. It also rejected Ellis' arguments against supervision, instead imposing a new five-year term of supervised release. Once again, the district court imposed the device-approval condition and a condition requiring location monitoring for twelve months. And this time, after rejecting the government's request for these conditions at the second revocation hearing, the district court ordered that Ellis "shall have no internet access" and could not possess any pornography or enter any location where he could access pornography. J.A. 128. The district court acknowledged the lack of evidence of any new criminal activity. But it noted that "the admitted violations with regard to the defendant's not just reluctance to comply with treatment but outright resistance to complying with the treatment . . . is a serious breach of that trust and puts up a barrier to demonstrating that the defendant is in fact integrating in a positive way." J.A. 117. The court added the that the treatment failures

9

appeared to result from "a recalcitrance on the part of the defendant." J.A. 117. Concluding its reasoning, the court explained that "[e]very one of the admitted violations tells [the court] that the defendant is the sort of person who is in need of further treatment and supervision." J.A. 118.

Ellis objected to the two new conditions, largely reiterating the arguments that persuaded the court not to impose them at the last revocation hearing. This time, however, the court was not persuaded. According to the district court, its basis "for imposing both of those restrictions goes directly to the reasons that [it] articulated with regard to [its] reasons for imposing the new term of supervised release, and they go to the overt resistance or what appears to [the court], from the record in this case, as the overt resistance of the defendant to treatment." J.A. 120. Ellis then appealed these two conditions to the Fourth Circuit.

We vacated the two challenged conditions. We first held that the condition restricting Ellis' access to pornography was not "reasonably related" to the sentencing factors under 18 U.S.C. § 3583(d)(1) and was overbroad under § 3583(d)(2). *Ellis*, 984 F.3d at 1095, 1102. We found that "the pornography restriction was inadequately supported and explained" because the government's justifications were not sufficiently individualized to Ellis' risks and needs. *Id.* at 1099. And we found that the condition restricted more liberty than was reasonably necessary because the condition forbade Ellis from being anywhere pornography might be accessed.

We also struck down the complete ban on internet access. We held that the condition was not "reasonably related" to the offense and was overbroad. *Id.* at 1095, 1105. There was "no evidence connecting the internet to any criminal conduct" since the record was

10

unclear as to whether his original state charges involved the internet. *Id.* at 1102. Similarly, the conditions of supervised release he admitted violating—"travelling without permission, dishonesty with the probation officer, failing to cooperate with treatment"—"did not involve the internet." *Id.* at 1103. We also explained that a "complete ban on internet access is a particularly broad restriction that imposes a massive deprivation of liberty," especially in today's information age. *Id.* at 1104.

But even while his appeal was pending, Ellis continued violating other, previously unchallenged, supervised release conditions. Ellis violated, again, the device-approval condition by possessing an unauthorized internet accessible electronic device. So, for a fourth time, the probation office petitioned the district court to revoke Ellis' supervised release.

During his latest revocation hearing, the government advocated for a number of special conditions. Ellis objected to two of them. First, although he had not objected the last time it was imposed, Ellis objected to the six-month location-monitoring condition, claiming it was not reasonably related to his personal characteristics or the underlying offense. In particular, Ellis argued that he had not been homeless for several years and that he could easily be found by the probation office. Ellis also underscored the financial and time burden of maintaining the location monitoring. During the hearing, the district court explored those objections and asked the probation office about those burdens. The probation officer explained that defendants on location monitoring are charged around three dollars a day to cover the cost of maintaining the GPS device. But the officer also explained that the probation office covers the cost for indigent defendants and that the

11

office does not revoke a defendant's supervised release for failure to pay. And the officer described how supervisees are given multiple batteries to aid in charging the device and how each battery can charge in just a few hours—meaning that a supervisee has access to "enough batteries for 24 hours of coverage" if he is ever "out and about" without a charging station. J.A. 156.

Relying on those statements, the district court rejected Ellis' objection to the location-monitoring condition, finding that his "history and characteristics" reflected a need to "closely monitor him." J.A. 161. And the court found that the six-month condition was "necessary to provide adequate deterrence" and "to protect the public." J.A. 161. Finally, the court detailed that it viewed the six-month condition, which was shorter than the previous periods for this condition, as a "transitionary provision" to aid Ellis in his return to supervised release. J.A. 161–62.

Second, Ellis objected to the device-approval condition—the requirement that the probation officer must first approve any electronic device that Ellis may possess that can access the internet. Although he had never objected the previous three times this condition was imposed, this time Ellis' primary "concern [was] that if the U.S. Probation Office has the discretion to tell [him] that he cannot possess any type of phone that can access the internet, then that is essentially the same as giving him a wholesale ban on the internet." J.A. 147. The district court disagreed. First, responding to the objection, the district court noted that the condition was "nothing new" and was "standard language that has been used by the probation office now for years." J.A. 147–48. The court then explained that the device-approval condition was necessary for Ellis because the probation office "need[s] to

12

know what device or devices [Ellis] is using so that they know what to check," given Ellis'

background. J.A. 149. The court clarified that "[i]f he's using it to get an Uber to go to

work or he's using it to make a job application or something, that's not a problem." J.A.

149. But the court stated that "[i]f he's using it for the purposes of accessing child

pornography . . . that's a big problem." J.A. 149.

The court continued by explaining the purpose behind the device-approval

condition. The court reasoned that registration of all devices was necessary so that the

probation officer can "know what to look for." J.A. 149. Until a device is registered, the

court stated, "[Ellis] can't use it." J.A. 149. The court explained that if Ellis presented a

device to the probation officer that had "software on it that would interfere with their ability

to check what he is looking at and so on, then they would have the ability and the discretion

to say you can't use that one" and that he should get another device. J.A. 150. Finally, the

court clarified that the condition was not about denying internet usage, because defendants

like Ellis "get to use the internet" based on Fourth Circuit precedent. J.A. 150.

Four days later, on February 22, 2021, the district court entered judgment following

revocation of supervised release. Included in the judgment was the device-approval

condition, which stated:

> Except as required for employment (see Condition 4), the defendant shall not
> use, purchase, possess, procure, or otherwise obtain any computer (as defined
> in 18 U.S.C. § 1030(e)(1)) or electronic device that can be linked to any
> computer networks, bulletin boards, internet, internet service providers, or
> exchange formats involving computers unless approved by the U.S.
> Probation Officer. Such computers, computer hardware or software is subject
> to warrantless searches and/or seizures by the U.S. Probation Office.

13

J.A. 168. Additionally, the written judgment included the location-monitoring condition—which provided:

> The defendant shall submit to stand alone location monitoring, to include GPS, for a period of the first six (6) months of supervised release and comply with the program requirements as directed.

J.A. 167.

On March 2, 2021, Ellis timely appealed the revocation of his supervised release and the sentence pronounced. We have jurisdiction to review pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II.

In considering Ellis' arguments, we begin with some basics about crafting conditions of supervised release. A sentencing court must impose conditions of supervised release consistent with the statutory requirements of 18 U.S.C. § 3583(d). Under that statute, special conditions of supervised release must be: "(1) 'reasonably related' to the nature and circumstances of the offense, the history and characteristics of the defendant, and the statutory goals of deterrence, protection of the public, and rehabilitation; (2) 'no greater [a] deprivation of liberty than is reasonably necessary' to achieve those statutory goals; and (3) consistent with any relevant policy statements issued by the Sentencing Commission." *Ellis*, 984 F.3d at 1098 (quoting 18 U.S.C. § 3583(d)).

When a defendant challenges a special condition as violating § 3583(d), "we review the district court's decision to impose the condition for abuse of discretion." *United States v. Comer*, 5 F.4th 535, 546 (4th Cir. 2021). Indeed, district courts have "broad latitude to

14

impose conditions on supervised release." *United States v. Dotson*, 324 F.3d 256, 260 (4th Cir. 2003). Thus, similar to other substantive and procedural challenges to sentencing, we reverse a determination only if the district court "'exceeded the bounds of permissible choice,' given the facts and the applicable law in the case at hand." *United States v. McComb*, 519 F.3d 1049, 1053–54 (10th Cir. 2007) (Gorsuch, J.) (quoting *United States v. Ortiz*, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986)). Because "in many cases there will be a range of possible outcomes the facts and law at issue can fairly support[,] rather than pick and choose among them ourselves, we will defer to the district court's judgment so long as it falls within the realm of these rationally available choices." *Id.*; *see also United States v. Langston*, 590 F.3d 1226, 1237 (11th Cir. 2009) ("The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court, and we will not substitute our judgment in weighing the relevant factors." (internal quotation marks omitted)).[1] In fact, "there are perhaps few arenas where the range of rationally permissible choices is as large as it is in sentencing, 'a task calling on a district court's unique familiarity with the facts and circumstances of a case and its judgment in balancing a host of incommensurate and disparate considerations, ranging from the degree of the defendant's cooperation and remorse to the need for deterring potential future offenders.'"

---

[1] The statutory requirements for determining appropriate conditions of supervised release incorporate and build off the district court's analysis of the § 3553(a) factors. *See* § 3583(d)(1) ("The court may order, as a further condition of supervised release, to the extent that such condition . . . is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D).").

*McComb*, 519 F.3d at 1053–54 (quoting *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1201 (10th Cir. 2007)).

Given this backdrop, it is unsurprising that in analyzing whether imposition of a condition constitutes an abuse of discretion, "'we give considerable deference to a district court's determination of the appropriate supervised release conditions,' recognizing that 'a district court has at its disposal all of the evidence, its own impressions of a defendant, and wide latitude.'" *United States v. Stoterau*, 524 F.3d 988, 1002 (9th Cir. 2008) (quoting *United States v. Weber*, 451 F.3d 552, 557 (9th Cir. 2006)).

**A. The Device-Approval Condition**

The device-approval conditions states that, "[e]xcept as required for employment," Ellis "shall not use, purchase, possess, procure, or otherwise obtain any computer . . . or electronic device that can be linked to . . . [the] internet . . . unless approved by the U.S. Probation Officer." J.A. 168. Ellis advances three arguments for why the district court erred by imposing this condition. First, Ellis asserts that the condition constitutes an improper delegation of judicial power to a probation officer. Second, Ellis likens the condition to a complete internet ban, akin to the one struck down in our previous *Ellis* opinion. Finally, Ellis complains that even if the condition is not a complete ban, it is still overbroad, depriving him of more liberty than is reasonably necessary. On this record, however, we are not persuaded.

16

**1. The device-approval condition is not an unconstitutional delegation.[2]**

Ellis first argues that the device-approval condition delegates "core judicial functions" to the probation officer in violation of Article III of the Constitution. Op. Br. 15. That is because, according to Ellis, the device-approval condition gives the probation officer unfettered discretion to determine the extent of his internet access, "including completely banning such access." Op. Br. 15. Ellis complains that the condition contains no guidelines to determine when a probation officer should approve his device and therefore gives the officer the ability to decide the extent of his punishment in contravention of Article III.

Probation officers may not be assigned any "core judicial function." *United States v. Johnson*, 48 F.3d 806, 808 (4th Cir. 1995); *see also Comer*, 5 F.4th at 547 ("Generally, 'courts may use nonjudicial officers, such as probation officers, to support judicial functions, as long as a judicial officer retains and exercises ultimate responsibility.'" (quoting *United States v. Miller*, 77 F.3d 71, 77 (4th Cir. 1996)). A district court violates Article III when it delegates a core judicial function to the probation officer, "such as the authority to decide the amount of a fine or restitution payment or whether a defendant must attend a treatment program." *United States v. Van Donk*, 961 F.3d 314, 327 (4th Cir. 2020) (internal citations omitted). But "as long as the court orders the broad principle guiding the condition of release and retains the ultimate authority over revoking release, the court may

---

[2] When a defendant challenges a special condition as an unconstitutional delegation, we review that constitutional challenge de novo. *Comer*, 5 F.4th 535 at 547.

17

allow the probation officer to fill in many of the details necessary for applying the condition." *Comer*, 5 F.4th at 547. That arrangement not only complies with the Constitution but makes good sense. "District courts and probation officers have substantial discretion to work in tandem in the crafting and management of supervised release." *United States v. Amin*, 85 F.4th 727, 734 (4th Cir. 2023).

For example, only a district court can impose a condition prohibiting a defendant from using social media without permission. *Comer*, 5 F.4th at 547. But the district court may constitutionally authorize the probation officer to grant such permission. *Id.* Similarly, only a district court can order a sex offender to attend a treatment program. *Van Donk*, 961 F.3d at 327. Yet the court may delegate the authority to establish "rules, requirements, and conditions" associated with the program to the treatment provider. *Id.* at 318, 327. "The upshot is that, while the district court must itself issue conditions of supervised release, it is a 'permissible delegation[]' for the probation officer 'to fashion the means or details of court-ordered' conditions." *Amin*, 85 F.4th at 734 (quoting *Comer*, 5 F.4th at 547).

The device-approval condition is not an unconstitutional delegation. First, the court ordered a "broad principle guiding the condition of release." *Comer*, 5 F.4th at 547. Ellis may use any device required for employment without approval. And Ellis may use any device for non-employment uses with approval. Second, the court "retain[ed] the ultimate authority of revoking release." *Id.* Nothing in the condition gives the probation officer that power. Passing those constitutional hurdles, the district court authorized Ellis' probation officer to grant or deny device approval. This did not improperly delegate judicial power. It merely "allow[ed] the probation officer to fill in many of the details necessary for

18

applying" the device-approval condition. *Amin*, 85 F.4th at 734.[3] For these reasons, the device-approval condition comports with our court's acknowledgment that "district courts can allow probation officers to make internet-access determinations without violating Article III." *Comer*, 5 F.4th at 548; *see also Amin*, 85 F.4th at 735.

This understanding of the device-approval condition is also consistent with the district court's explanation at Ellis' sentencing hearing. *See United States v. Hull*, 893 F.3d 1221, 1225 (10th Cir. 2018) (rejecting a delegation challenge in part because of the district court's statements at the sentencing hearing); *cf. Comer*, 5 F.4th at 542–43 (analyzing a vagueness challenge by reviewing clarifications made by the district court during sentencing explaining the condition); *United States v. Romero*, 676 F.2d 406, 407 (9th Cir. 1982) (Kennedy, J.) ("The probation order of the court is the principal determinant of the conditions of probation, but it is not the sole source for defining the conditions. In addition to the bare words of the probation condition, the probationer may be guided by the further definition, explanations, or instructions of the district court and the probation officer."). To

---

[3] In fact, many of Ellis' current supervised release conditions involve approval by a probation officer. For one, Ellis "shall not have any social networking accounts on networks used or reasonably expected to be used by minors without the approval of" his probation officer. J.A. 168. For another, Ellis "shall not seek any extension of credit (including, but not limited to, credit card account, bank loan, personal loan) unless authorized to do so in advance by the probation officer." J.A. 166. At oral argument, Ellis argued that his non-delegation challenge was not aimed at all conditions involving prior approval, per se, but toward conditions where the underlying general prohibition is itself impermissible, setting aside any approval. But that approach seems untenable, since several underlying prohibitions contained within Ellis' supervised release conditions, absent approval, could be seen as impermissible if approval were set aside. For instance, Ellis can only reside at a place approved by his probation officer. So too must he obtain his probation officer's approval for any employment. And Ellis cannot leave the judicial district without first obtaining approval of his probation officer or the court.

repeat, at Ellis' sentencing hearing, the court explained that though Ellis "get[s] to use the internet," the device he uses to connect to the internet must first be reviewed and approved by his probation officer. J.A. 150–51. That is because the probation officer "need[s] to know what device or devices [Ellis] is using so that they know what to check," given Ellis' background as a sex offender. J.A. 149. The court later detailed how approval works. If Ellis presented a device to the probation officer that had "software on it that would interfere with their ability to check what he is looking at and so on, then they would have the ability and the discretion to say you can't use that one." J.A. 150.

The record indicates the district court did not grant probation unfettered discretion. Thus, authorizing probation to grant or deny device approvals does not violate Article III. *See Amin*, 85 F.4th at 735–36; *Comer*, 5 F.4th at 547.

**2. The device-approval condition is not a complete ban on internet use.**

Ellis next argues that the device-approval condition is "no less a ban than the complete internet ban that this Court struck down in Mr. Ellis's previous appeal." Op. Br. 12. According to Ellis, this condition could allow his probation officer to simply withhold approval of all devices, functionally forbidding him from internet use and banning him from our modern society.

The first problem with Ellis' argument is that, on its face, the condition is not a complete ban. To the contrary, the condition *permits* Ellis to use any devices needed for his employment. That is because any device Ellis may need for employment purposes is exempt from the requirement; he may already use those devices without approval of his probation officer. *See* J.A. 168 ("*Except as required for employment* . . . [Ellis] shall not

20

use, purchase, possess, procure, or otherwise obtain any computer . . . or electronic device that can be linked to any computer networks, bulletin boards, internet, internet service providers, or exchange formats involving computers unless approved by the U.S. Probation Officer." (emphasis added)); *United States v. Trimble*, 969 F.3d 853, 857 (8th Cir. 2020) (finding that a similar condition "is not an absolute prohibition" because it "specifically contemplates that [the defendant's] probation officer may allow access to [internet-capable] devices for employment purposes").

And the condition contemplates internet use outside of employment too, so long as Ellis presents a device to his probation officer for review and approval. Making Ellis' ability to use the internet even more clear, a separate condition permits probation to install monitoring software on approved personal devices. J.A. 168 ("The defendant shall allow the U.S. Probation Officer, or other designee, to install software designed to monitor computer activities on any computer the defendant is authorized to use, except for that of an employer."). So, instead of a total ban, the device-approval condition is "a process to apply the monitoring conditions for personal devices." *United States v. Hutton*, No. 21-4073, 2023 WL 4488260, at *4 (4th Cir. July 12, 2023); *see United States v. Aquino-Florenciani*, 894 F.3d 4, 7 (1st Cir. 2018) (rejecting characterization of a similar condition as a "total ban" because the defendant was "permitted to use the internet and possess

21

internet-capable electronic devices, subject to approval from his probation officer and electronic monitoring").[4] [5]

---

[4] Should the condition be applied in an abusive manner, Ellis' real complaint is against the probation officer and not the condition. Many reasons guard against that possibility, however. First, Ellis (and importantly, the probation officer) has the guidance and benefit of what the district court said at sentencing. Second, and similarly, as our prior *Ellis* opinion and this one make clear: *Ellis is allowed to use personal devices to access the internet* so long as probation approves the devices in advance. Third, if his personal devices are arbitrarily denied, Ellis may request that his probation officer explain the parameters of the condition and exactly why the device was denied. After all, Ellis' probation officer has a statutory obligation to instruct him "as to the conditions specified by the sentencing court." 18 U.S.C. § 3603(1); see *Comer*, 5 F.4th at 543–44. As noted in *Comer*, if a defendant is uncertain of how a condition works or what is required of them, they may always ask questions of their probation officer for guidance. 5 F.4th at 543–44; *cf. United States v. Hamilton*, 986 F.3d 413, 423 (4th Cir. 2021) (finding vagueness concern regarding condition of release to be reduced by the releasee's ability to seek clarification from his probation officer). Fourth, Ellis can always ask the district court to modify the condition if the probation officer fails to implement it as we and the district court described. Specifically, at any time, Ellis can seek a modification if "such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). Fifth, if Ellis' supervised release term is revoked following probation's improper application of the condition, Ellis can "always bring an as-applied challenge down the road if [he] believes [his] rights have been violated by a specific application of the condition." *Comer*, 5 F.4th at 544 (citing *Van Donk*, 961 F.3d at 325–26).

[5] Our dissenting colleague concludes that the device-approval condition represents a "ban" on personal internet use by evaluating a "baseline"—that is, removing the approval aspect of the condition. Diss. Op. at 36–38. In other words, if the approval portion is set aside, the dissent questions what distinguishes the condition from an outright ban on personal internet use. But that approach suffers from at least two drawbacks. First, it ignores "the condition's plain text," which contemplates approval for personal internet use in coordination with other conditions ensuring monitoring. *Id.* at 39; *see supra*, at 21. Second, though the dissent discusses the travel-approval condition, *see* Diss. Op. at 37, it fails to defend many other potentially problematic conditions if evaluated under that approach. *See supra*, at 19 n.3. And it seems that if so evaluated, many commonly used conditions would necessarily be deemed invalid. Ignoring the approval portion of various conditions would mean, for example, that Ellis is "banned" from having a credit card, bank loan or personal loan. More extreme yet, Ellis can only "live at a place approved by the

As we noted in Ellis' first appeal, the internet is essential for an individual to fully participate in today's society and economy. *Ellis*, 984 F.3d at 1104. As a result, "[a] complete ban on internet access is a particularly broad restriction that imposes a massive deprivation of liberty." *Id.* But the complete internet ban that we previously rejected differs markedly from the device-approval condition here. *Compare* J.A. 128 ("[Ellis] shall have no internet access."), *with* J.A. 168 ("Except as required for employment . . . [Ellis] shall not use, purchase, possess, procure, or otherwise obtain any computer . . . or electronic device that can be linked to . . . [the] internet . . . unless approved by the U.S. Probation Officer."). The device-approval condition allows Ellis to use devices connected to the internet for employment without any approval. It further allows use of an internet-connected device outside of employment with prior approval of the probation officer. As a result, it does not—unlike the condition we previously struck—preclude Ellis from participating in a modern and increasingly online world.[6] Ellis "is permitted to use a

---

probation officer." J.A. 166. The baseline approach the dissent submits might suggest that Ellis is functionally banned from living *anywhere* without approval.

[6] Ellis argues that three out-of-circuit decisions support the proposition that a device-approval condition is indistinguishable from a complete ban. But those cases do not conclude that a condition involving approval of internet-capable devices for personal use is indistinguishable from a complete ban on internet use.

In *United States v. LaCoste*, the defendant was prohibited "from making *any* use of the Internet without first getting his probation officer's approval." 821 F.3d 1187, 1191 (9th Cir. 2016). Ellis is correct that the Ninth Circuit stated that "[w]hen a total ban on Internet access cannot be justified, . . . a proviso for probation-officer approval does not cure the problem." *Id.* at 1192. But that internet-use condition, which was vacated, is more prohibitive than the device-approval condition here. Indeed, the Ninth Circuit previously permitted the use of a condition like the one at issue in this appeal. *See United States v. Riley*, 576 F.3d 1046, 1049 & n.3 (describing conditions "requir[ing] Riley to obtain

23

computer and the internet with prior approval from a probation officer who will have the guidance of our case law, which recognizes the importance of computers and internet access for education, employment, and communication, when considering [his] requests." *United States v. Koch*, 625 F.3d 470, 482 (8th Cir. 2010). Under these facts, the restriction is not a complete ban.

### 3. The device-approval condition is not overbroad.

Last, Ellis argues that even if the device-approval condition is not a complete ban, it is still overbroad because it deprives him of more liberty than is reasonably necessary. In particular, Ellis claims there are other less burdensome ways for the probation office to

---

approval from his probation officer before using any computer or Internet account" as "valid" release conditions).

In *United States v. Holena*, the Third Circuit reviewed two conflicting conditions, one stating that the defendant could not "possess and/or use computers" and another stating that he "must not access the Internet except for reasons approved in advance by the probation officer." 906 F.3d 288, 291 (3d Cir. 2018). Though the opinion refers to a "computer ban," the Third Circuit was speaking only of the first condition ("possess and/or use computers"), not the second condition (the approval condition), which "conflict[ed] with the ban." *Id.*

And in *United States v. Ramos*, the condition at issue stated that the defendant "shall not possess or use a computer that contains an internal, external or wireless modem without the prior approval of the Court" and that he "shall not possess or use a computer, cellular telephone, or any other device with internet accessing capability at any time and/or place without prior approval from the probation officer." 763 F.3d 45, 51 (1st Cir. 2014). While the First Circuit vacated these conditions, it did not hold that an approval condition is indistinguishable from a complete ban. Indeed, as noted above, the First Circuit has rejected characterizing a similar condition as a "total ban" because the defendant was "permitted to use the internet and possess internet-capable electronic devices, subject to approval from his probation officer and electronic monitoring." *Aquino-Florenciani*, 894 F.3d at 7.

24

monitor a device used to access the internet outside of employment purposes besides the device-approval condition.

To determine whether the district court abused its discretion in imposing a broad restriction involving the use of the internet, we consider three factors: whether "(1) the defendant used the internet in the underlying offense; (2) the defendant had a history of improperly using the internet to engage in illegal conduct; or (3) particular and identifiable characteristics of the defendant suggested that such a restriction was warranted." *Hamilton*, 986 F.3d at 422 (quoting *United States v. Perazza-Mercado*, 553 F.3d 65, 70 (1st Cir. 2009)).[7]

Under the first factor, the record does not reveal whether Ellis used the internet in his original child pornography charges in 2005 and 2006. As we noted in Ellis' first appeal, "[p]resumably, those crimes often involve the internet, but could just as well be carried out

---

[7] Our opinions following *Hamilton* have used "and" (and not "or") to connect these three factors. *See Comer*, 5 F.4th at 546. And in those cases, we found all three of the factors present. *See, e.g.*, *Amin*, 85 F.4th at 738 ("[A]ll three factors suggest the Internet restriction was justified in this case."). But that does not mean all three factors must be present for us to determine that the district court's imposition was not an abuse of discretion. For one thing, the First Circuit's factors represent a distillation of at least three different lines of cases discussing the use of such conditions. *See Perazza-Mercado*, 553 F.3d at 70. Thus, our first published opinion on the matter separated the factors with "or." *See Hamilton*, 986 F.3d at 421–22. For another, even in using "and," *Comer* and *Amin* seem to do so describing factors to be considered, not essential requirements. And finally, we have repeatedly said that special conditions for sex offenders, like the device-approval condition at issue here, need not have "an offense-specific nexus, but the sentencing court must adequately explain its decision and its reasons for imposing [the condition]." *United States v. Douglas*, 850 F.3d 660, 663 (4th Cir. 2017) (quoting *United States v. Worley*, 685 F.3d 404, 407 (4th Cir. 2012)). So, even if the first factor were not present—because the defendant did not use the internet to commit his underlying offense—a district court does not abuse its discretion if one of the other factors adequately supported the condition.

25

on a computer without using the internet, via text message on a cell phone, or with a Xerox machine—not to mention the analog possibilities." *Ellis*, 984 F.3d at 1103. And his failure to register under SORNA, a process that normally takes place in person, 34 U.S.C. § 20913(c), did not involve the internet. Likewise, as to the second factor, it is unclear whether Ellis has used the internet to engage in illegal conduct.

However, the third factor supports the condition. Ellis repeatedly possessed unauthorized devices. In fact, in this most recent revocation proceeding, Ellis admitted to violating a similar device-approval condition through his possession of an unauthorized device capable of accessing the internet. And this was not the first time. In his second revocation hearing, Ellis lied about viewing pornography during a polygraph exam and, after learning he failed the polygraph exam, admitted that he watched pornography daily on an unauthorized internet-empowered device. On top of that, Ellis repeatedly failed to comply with the treatment obligations imposed by the district court. And the court expressed its concern that his "recalcitrance" to such treatment impeded efforts to address his pornography addiction. J.A. 117.

To sum up, the district court faced a defendant who violated his supervised release conditions over and over. As those violations were brought to the court's attention, the court accommodated several requests for modifications that Ellis sought or agreed to while imposing release conditions designed to comply with § 3583(d). As to two conditions included in Ellis' third term of supervised release, the court went too far. So we vacated those conditions in our prior opinion. But the device-approval condition challenged here, and the district court's responses to Ellis' objection to it, comply with our precedent while

26

addressing Ellis' chronic violations of the court's release conditions. "Given these facts, the district court did not abuse its discretion by imposing the condition." *Comer*, 5 F.4th at 546.

### B. The Location-Monitoring Condition

Ellis also challenges the location-monitoring condition. That condition provides that Ellis "shall submit to stand alone location monitoring, to include GPS, for a period of the first six (6) months of supervised release and comply with the program requirements as directed." J.A. 167. Ellis argues that the location-monitoring condition violates the statutory requirements of § 3583(d) in two ways. First, Ellis claims that the location-monitoring condition lacks a reasonable relationship to the relevant sentencing factors, violating § 3583(d)(1). Second, Ellis asserts that the condition deprives him of more liberty than reasonably necessary to serve the purposes of supervision, violating § 3583(d)(2).

### 1. The location-monitoring condition is "reasonably related" to the relevant sentencing factors.

Ellis asserts that six months of location monitoring is not reasonably related to the nature and circumstances of his underlying offense, his history and characteristics, the goals of deterrence, protection of the public and rehabilitation, as required by § 3583(d)(1). We are not persuaded. The location monitoring is "reasonably related" to the relevant factors.

First, location monitoring relates not only to Ellis' underlying offense of failing to register as a sex offender but also to other conditions of supervised release to which he is subject. Indeed, the very purpose of SORNA is to keep track of the physical location of sex

27

offenders to protect the public. *United States v. Douglas*, 850 F.3d 660, 665 (4th Cir. 2017); *see also United States v. Price*, 777 F.3d 700, 703 (4th Cir. 2015) ("SORNA establishes a comprehensive regulatory scheme to track and provide community notification regarding convicted sex offenders."). Ellis concedes as much but quibbles with exactly *how related* location monitoring is to his underlying offense, given that SORNA already requires him to inform his probation officer of his residential address. But with Ellis' longstanding inability to remain in a physical location known to his probation officer, the location-monitoring condition is "reasonably related" to his underlying offense given SORNA's aim at locating sex offenders.

The location-monitoring condition relates to more than just Ellis' underlying failure-to-register offense. It also relates to enforcing other conditions of his supervised release. The district court included the standard sex offender conditions of supervised release as adopted in the Western District of North Carolina, several of which include location-based conditions. Those conditions require Ellis to obtain approval before changing residences or loitering within 100 feet of various locations. On top of that, the standard conditions required Ellis to remain in the judicial district in which he is allowed to reside unless he receives permission from the court or his probation officer. The location-monitoring condition thus allows Ellis' probation officer to discover if Ellis travels to another district or visits a forbidden location without approval.

Second, the location-monitoring condition is reasonably related to Ellis' history and characteristics. As detailed above, Ellis has repeatedly left the judicial district without permission. His unwillingness to remain in a location required by various conditions has

28

resulted in modifications as well as revocations of his supervised release terms. And in 2019, Ellis not only failed to remain in his judicial district; he separately admitted to allowing his GPS device to run out of battery power and lied about his whereabouts.

At oral argument, Ellis argued that the length of time since many of these incidents made the location monitoring *less* "reasonably related." That is, Ellis asserts that at the time of his fourth revocation hearing in 2021, it had been at least two years since he had flouted any location-based condition. But this argument falls short for two reasons. First, it does not account for the eleven-month term of imprisonment Ellis served in 2019. Time served in round-the-clock federal custody should not count as time Ellis has complied with supervised release terms related to his physical location. Second, Ellis violated the location-based conditions in 2019 before returning to prison. Recall that early that year, Ellis left the judicial district without first receiving permission and failed three times to keep his GPS battery charged. What's more, when confronted, Ellis was untruthful with his probation officer about where he had been when explaining why his battery died. These incidents led to the third revocation of his supervised release, the eleven-month term of imprisonment and a twelve-month location-monitoring condition. Though leaving the judicial district may not have directly led to this most recent revocation, the district court did not abuse its discretion in 2021 by considering Ellis' 2019 history and characteristics.

Third, the location-monitoring condition reasonably relates to the goals of deterrence and protecting the public. As explained above, the condition allows probation officers to detect whether Ellis has failed to appear for required treatment, left the jurisdiction without authorization or misrepresented his whereabouts—all things he has

29

done before. That detection will not only help protect the public; it will also discourage Ellis from recidivism, features recognized by the district court during imposition of the sentence. *See* J.A. 161 (finding that six months' location monitoring was "necessary to provide adequate deterrence and protect the public"). Location monitoring also "aids compliance with many of [Ellis'] other conditions of release, each of which is reasonably related to deterrence and public safety." *United States v. Lopez*, 800 F. App'x 473, 476 (9th Cir. 2020).

Fourth, the location-monitoring condition reasonably relates to the goal of Ellis' rehabilitation. Location monitoring allows the probation officer to know in real time if Ellis has reported to his required treatment. This issue is not theoretical. Ellis has failed to comply with conditions concerning treatment multiples times. And the treatment conditions have been found necessary for his rehabilitation. If, as before, Ellis fails to report for treatment, Ellis will be easily located by his probation officer. Thus, location monitoring also encourages Ellis' compliance with the treatment conditions that have been found necessary for his rehabilitation.[8]

---

[8] Our dissenting colleague points out that in our previous *Ellis* opinion, we noted that a district "court cannot impose a special condition of supervised release" as "an incentive for [a supervisee's] compliance with treatment," and that "doing so amounts to an abuse of discretion." Diss. Op. at 42 (quoting *Ellis*, 984 F.3d at 1100). In that instance, the district court had, in part, justified a total ban on pornography as an incentive to compel Ellis' cooperation in various treatment programs. *Ellis*, 984 F.3d at 1099–100. But we disagree the district court did that here. It did not use the location-monitoring condition as a "punishment" or a "stick" to prompt certain behavior. Instead, it imposed a condition allowing probation officers to be immediately aware of any noncompliance with necessary treatment. For that reason, we conclude the condition will aid in—and thus is reasonably related to—his rehabilitation.

As a result, the condition is "reasonably related" to the statutory requirements, and the district court did not abuse its discretion in imposing it.

**2. The location-monitoring condition involves no greater deprivation of liberty than is reasonably necessary.**

Finally, Ellis contends that six months of location monitoring is a greater deprivation of his liberty than is reasonably necessary. In particular, Ellis points to a host of what he describes as "less restrictive" alternatives to which he is already subject that obviate the need for location monitoring. Op. Br. 23. Once more, on this record, we disagree.

Remember how we got here. The district court only began imposing location monitoring as a condition when it was clear that the "less restrictive" alternatives to which Ellis points did not work. Indeed, a less restrictive alternative—*no* location monitoring— was tried during Ellis' first supervised release term. But almost immediately, Ellis left the judicial district without receiving permission. *Ellis*, 984 F.3d at 1095. And as a result, the court ordered two months of home detention with location monitoring technology. *Id.* Since then, and as outlined above, Ellis has built an extensive record of failing to abide by location-specific conditions, whether by leaving the jurisdiction without permission or by not showing up for required treatment. Given this evidence in the record, the district court did not abuse its discretion in determining that the location-monitoring condition was necessary.

Also, the district court tailored the condition specifically for Ellis. Following an extensive colloquy, the court imposed only six months of location monitoring. Six months

is half the length of time that Ellis has previously been subject to location monitoring following revocations. In fact, the district court explicitly imposed this condition as a "transitionary provision" to help Ellis continue to make progress in abiding by his conditions. J.A. 161–62. The court felt that during this transition, the probation office needed to "closely monitor" Ellis' activity. J.A. 161. The district court recognized Ellis' progress but wanted him to "cross that threshold to where that progress includes not doing anything that violates" his "conditions of . . . supervision" or the law. J.A. 163. Reasonable minds might have handled the situation differently. But the district court's thoughtful consideration of Ellis' history and current situation was not an abuse of discretion.

To be sure, wearing and maintaining a location-monitoring device imposes a burden on Ellis. As Ellis points out in his brief, GPS monitoring may constitute a severe intrusion into the private life of an ordinary citizen. *See Carpenter v. United States*, 585 U.S. 296, 310–11 (2018). However, Ellis—as an individual on supervised release—does not have the typical expectation of privacy of an ordinary citizen. *See United States v. Russell*, 45 F.4th 436, 440 (D.C. Cir. 2022) ("But Russell does not have a typical 'expectation of privacy that society would recognize as legitimate.'" (quoting *Samson v. California*, 547 U.S. 843, 852 (2006))); *United States v. Williams*, No. 21-4508, 2023 WL 6366688, at *4 (4th Cir. Sep. 29, 2023) ("[T]he Supreme Court has acknowledged that 'a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment.'" (quoting *Samson*, 547 U.S. at 847)). And as a result, "courts administering probation 'may impose reasonable conditions that deprive the offender of some freedoms

32

enjoyed by law-abiding citizens.'" *United States v. Lara*, 850 F.3d 686, 690 (4th Cir. 2017) (quoting *United States v. Knights*, 534 U.S. 112, 119 (2001)). Indeed, Ellis' other supervised release conditions impose great intrusions on his privacy, as he must, among other things, permit probation officers to visit his home at any time, allow them to search his home without a warrant and provide them with any requested financial information.[9]

Next, Ellis argues that the condition imposes a financial burden because a supervisee is normally required to pay three dollars per day to cover the cost of the GPS tracking device. But the district court addressed this issue. He asked the probation officer present at Ellis' sentencing hearing about the potential financial burden. In response, the probation officer explained that supervisees are encouraged "to pay if they're able," but that the probation office would not revoke a supervisee's supervised release for failure to pay. J.A. 156. The probation officer went on to explain that for an indigent supervisee like Ellis, the probation office "would cover the cost." J.A. 156; *see also id.* ("If we have to we'll use our financial means to cover it.").

Finally, Ellis argues that the condition imposes a serious time burden because it "must be frequently charged." Op. Br. 22. But the district court covered that concern too. It heard from the same probation officer, who explained that supervisees are given multiple batteries to aid in charging and that each battery can charge in just a few hours—meaning that Ellis has access to "enough batteries for 24 hours of coverage." J.A. 156.

---

[9] We also note that Ellis did not object to any of these conditions at sentencing. Nor did he object to other conditions that significantly restrict his liberty, such as limitations on travel, ownership of dangerous weapons and being around or communicating with children. *See Russell*, 45 F.4th at 440.

To conclude, the district court did not abuse its discretion by imposing six-months of location monitoring during this tailored, transitionary phase because it does not restrict Ellis' liberty any more than is reasonably necessary.

## III.

At its core, this case is "determined largely based on the standard of review we must employ." *Burgess v. Goldstein*, 997 F.3d 541, 545 (4th Cir. 2021). Were we sitting in the district court's shoes, we might ask ourselves whether we should handle Ellis' release conditions differently. But that of course is not the question before us. The question is whether the district court abused its discretion in imposing the device-approval condition or the location-monitoring condition. It did not. At the latest sentencing hearing, the district court heard objections, responded to concerns, and considered the appropriate statutory factors before imposing Ellis' conditions of supervised release. On the record before us, the district court did not abuse its discretion.

Accordingly, the district court's judgment—including the device-approval condition and the location-monitoring condition—is

*AFFIRMED*.

34

GREGORY, Circuit Judge, dissenting:

I would hold that both conditions of release that Ellis challenges violate § 3583's mandate that conditions of release involve "no greater deprivation of liberty than is reasonably necessary." 18 U.S.C. § 3583(d)(2). Both should be vacated. Because I cannot agree with my colleagues in the majority that the challenged conditions are not overbroad, I respectfully dissent.

I.

I begin with the internet condition. In 2021, this Court held that a condition of supervised release that completely bans Ellis from accessing the internet "cannot be sustained as 'reasonably related' under 18 U.S.C. § 3583(d)(1) and [is] overbroad under 18 U.S.C. § 3583(d)(2)." *United States v. Ellis (Ellis I)*, 984 F.3d 1092, 1095 (4th Cir. 2021). On remand, the district court imposed a condition that bans Ellis's internet access "[e]xcept as required for employment" or "approved by the U.S. Probation Officer." J.A. 168. The question before us now is whether these two provisos meaningfully differentiate the new condition from the old one. The majority holds that they do. I cannot agree.

I agree with the majority that the device-approval condition is not an unconstitutional delegation of judicial authority to the probation officer. But we must still assure ourselves that the entire range of possibilities of how the probation officer might implement that condition complies with § 3583. The condition does not pass muster.

In *United States v. Hamilton*, this Court considered the permissibility of a condition that prohibited the defendant from "access[ing] the Internet except for reasons approved in advance by the probation officer." 986 F.3d 413, 421 (4th Cir. 2021). We determined that

the restriction was reasonably necessary and not overbroad as applied to the facts of Hamilton's case. *Id.* But, importantly, we treated the condition as a "total Internet ban." *Id.* And we distinguished Hamilton's situation from "cases vacating a total Internet ban" based on the facts supporting such a restrictive condition in Hamilton's case, not based on the purportedly narrower scope of an approval condition. In fact, apart from quoting the condition itself at the start of the analysis, we did not reference even once the fact that Hamilton *could* access the internet if his probation officer approved such access. The breadth of the provision was justified because of Hamilton's prior criminal conduct—not because the approval provision narrowed its scope.

Several of our sister circuits have also analyzed approval internet conditions as the equivalent of a complete ban.[1] *See United States v. LaCoste*, 821 F.3d 1187, 1192 (9th Cir. 2016) (rejecting the government's contention that an approval condition is "not really a total ban"); *United States v. Ramos*, 763 F.3d 45, 61 (1st Cir. 2014) (stating that an approval provision "does not immunize the ban from an inquiry that evaluates the justification for the ban in the first instance").

It is certainly permissible for courts to impose approval conditions that give probation officers discretion to relax the stringency of the condition. But, under *Hamilton*, the question when determining the propriety of an approval condition must be whether the

---

[1] The Seventh Circuit has equated an approval condition to a complete ban in dicta but has not expressly analyzed an approval condition as a complete ban. *See United States v. Scott*, 316 F.3d 733, 735 (7th Cir. 2003) (referring to an approval condition as a "flat ban" but vacating on the basis that defense counsel had not had notice of the provision prior to the revocation hearing).

36

baseline (the status quo if the probation officer does nothing) is permissible. *See id.* at 422 (explaining why, based on the facts of Hamilton's offense, a "total ban" did not "sweep[] too broadly"). Here, the baseline is a total personal-use ban. If the probation officer does not give Ellis approval to use any device, Ellis will not have access to the internet "[e]xcept as required for employment." J.A. 168. Thus, I would evaluate the permissibility of this approval condition by asking whether a total personal-use internet ban would have been permissible. *See LaCoste*, 821 F.3d at 1193 ("When a total ban on Internet access cannot be justified, as is the case here, we have held that a proviso for probation-officer approval does not cure the problem.").

Contrary to the government's suggestion that invalidating this particular approval condition will put an end to the multitude of approval conditions imposed by district courts across the country, framing the analysis in this way leaves intact all approval conditions in which the baseline is permissible. For example, a condition prohibiting supervisees from leaving the jurisdiction without approval is regularly imposed to ensure the supervisee does not abscond from jurisdiction and that the probation officer can reach them when necessary. In that scenario, the baseline (being restricted to the jurisdiction of supervision) is permissible. Giving the probation officer discretion to make the condition more lenient in the future (by giving approval to travel outside the jurisdiction) does not invalidate the condition. But because probation officer discretion can transform an approval condition into a complete ban, an approval condition is "reasonably necessary" only if a complete ban is justified. *See Ramos*, 763 F.3d at 61 ("To approve problematic conditions because a judge or probation officer might, in his or her discretion, relax them in the future,

37

undermines the command to sentencing courts to not deprive offenders of more liberty than necessary to carry out the goals of supervised release.").

When we struck down the total internet ban in Ellis's last appeal, we explained that it not only burdened his First Amendment rights, but also interfered with his ability to reenter society, including his ability to secure housing and employment. *Ellis I*, 984 F.3d at 1105–06. And it was "inconsistent with the vocational and educational goals of supervised release." *Id.* at 1106 (internal quotation omitted). As such, it "may be as likely to hinder Mr. Ellis's progress as to help it." *Id.*

As the majority rightly notes, "a condition involving approval of internet-capable devices for personal use" is not a complete ban on internet use because it does not require approval for professional (employment-related) use. Maj. Op. at 23 n.6. The question, then, is whether the employment-use exception saves this condition, or whether any of the facts have materially changed since Ellis's last appeal. I conclude that even with the employment-use exception, the condition is still overbroad.

The employment-use exception to the internet ban does not address the vast overbreadth problem we noted in *Ellis I*. In addition to employment, we said that internet use is vital to "securing housing." *Ellis I*, 984 F.3d at 1105. There is no exemption in the new condition that addresses use for this purpose. We also said that an internet ban prevents Ellis from "engaging in the kind of educational and vocation training" that may be required. *Id.* It is not clear that an exemption for use "*required* for employment," J.A. 168 (emphasis added), would permit these types of uses.

38

The government also argued that the district court's on-the-record statements during the revocation hearing provide "guiding principles" that narrow the scope of the provision by guiding the probation officer's application of that provision. For example, the government said that the "district court made clear that Ellis 'get[s] to use the internet.'" Resp. Br. at 57 (quoting J.A. 150) (brackets in original). It also pointed to the district court's statements that (1) the purpose of the condition is to ensure that probation knows what devices Ellis is using, and (2) "the 'big problem' the probation office should seek to avoid" is Ellis's access to child pornography. Resp. Br. at 58 (quoting J.A. 149). These statements, it said, limit probation's discretion. The majority accepts, in part, the government's invitation to superimpose the district court's on-the-record statements onto the condition. *See* Maj. Op. at 22 n.4. Respectfully, I would not do so.

When deciding post-hoc challenges to probation's application or interpretation of a particular provision, courts look to the condition's plain text. *See, e.g.*, *United States v. Lingle*, 557 F. Supp. 673, 684 (E.D.N.C. 2021). The relevant question in that context is whether the probation officer's instructions or conduct were consistent with the text of the condition. In that posture, courts are unlikely to scour the prior record for statements that may inform the probation officer's discretion. Accordingly, I would decline to give the district court's on-the-record statements a limiting function in this context. Because fully withholding Ellis's internet excess (except as "required for employment") is consistent with the text of the condition, I would analyze the condition as such. And, based on our holding in Ellis's prior appeal, that condition is still too restrictive.

39

That leaves the question of whether any facts have materially changed since Ellis's last appeal. At the revocation hearing during which the challenged condition was imposed, the district court stated that "the record really isn't any different this time" than it was during Ellis's last appeal. J.A. 147. However, there is one new fact that bears on the internet condition that arose since Ellis's last appeal: Ellis admitted to violating a similar condition in his most recent revocation proceeding. But, in my view, that one instance does not alone justify the restriction. We said before that a total ban was overbroad because it unnecessarily interfered with his "reentry to society," including his ability to "secur[e] housing and employment," and because it implicates Ellis's First Amendment rights, "which is more than merely inconvenient." *Ellis I*, 984 F.3d at 1105. We also pointed out that "the majority of circuits have held that a complete ban on internet access is overbroad even where the record contains evidence of non-contact child pornography activity, or similar conduct, on the internet." *Id.* at 1104–05. None of that has changed.

While it is true that conditions like the one here, or even conditions that are more restrictive than this one, have been upheld, *cf.* Maj. Op. at 23 n.5, that is beside the point. Whether a condition is more restrictive than reasonably necessary is a fact-bound question that must be resolved based on the facts of each case. Ellis's prior appeal tells us that a total ban is overbroad based on Ellis's facts. Other cases tell us only what law to apply to the facts to make that determination.

In sum, I would evaluate the permissibility of an approval condition by looking to the most restrictive implementation of that condition. Here, that is a personal-use internet ban. We held in Ellis's prior appeal that a total internet ban was overbroad in violation of

40

§ 3583 in his case. In my view, neither the employment-use exception to the ban nor new facts that arose since Ellis's last appeal save the condition. Accordingly, I would vacate the challenged internet condition.

II.

I would likewise vacate the challenged GPS monitoring condition, because I conclude that it, too, is overbroad. While the condition bears a tenuous relationship to the relevant statutory factors, primarily Ellis's conduct while on supervised release in the past,[2] I believe the restriction is too restrictive to be justified by that tenuous relationship.

At the revocation hearing, as to the location monitoring provision, the district court asked what the burden was on Ellis to comply with the provision. J.A. 155. The probation officer explained that it provided supervisees with enough batteries for 24 hours of coverage, that supervisees were required to keep their batteries charged, and that there was a $3 per day fee but that it would not revoke supervision for failure to pay. J.A. 156. To justify its imposition of the location monitoring provision, the district court said only that it believed that "the circumstances of the defendant's cooperation with probation," which was "part of his history and characteristics" reflect "that in order to closely monitor the

---

[2] Though I believe that the condition is reasonably related to Ellis's past conduct to the extent that he left the jurisdiction without permission and failed to make contact with his probation officer at the appropriate time, I cannot agree with the majority's suggestion that Ellis's past failure to keep his GPS monitor battery charged justifies imposing location monitoring. *See* Maj. Op. at 28. His failure to charge the battery in no way endangers the public, and it says nothing about his ability to reenter society. Failure to charge a battery is certainly not criminal conduct, and the only reason it was an issue at all is because a location monitoring provision was previously imposed. That violation cannot justify a restriction of liberty as severe as location monitoring.

41

defendant's activity, at least during the first part of the transitionary period," the condition was "something that is necessary to provide adequate deterrence to protect the public." J.A. 161. It saw the condition "as a transitionary provision." *Id.*

Location monitoring is a severe restriction on the liberty of the supervisee. To that end, the U.S. Sentencing Guidelines recommend electronic monitoring only as a means of ensuring that supervisees comply with home confinement or curfew conditions. *See* U.S.S.G. §§ 5D1.3(e)(5), 5F1.2 n.1. Ellis was not subject to home confinement or curfew. Location monitoring might also be particularly appropriate in a domestic violence case where the supervisee is prohibited from contacting the victim in any way. But that situation does not apply here either.

The majority also contends that the location monitoring condition "encourages Ellis' compliance with the treatment conditions that have been found necessary for his rehabilitation." Maj. Op. at 30. But in Ellis's prior appeal, we said that "a court cannot impose a special condition of supervised release" as "an incentive for Mr. Ellis's compliance with treatment"; "doing so amounts to an abuse of discretion." *Ellis I*, 984 F.3d at 1100. We explained that a restriction imposed "solely to incentivize compliance with other release conditions [is] as arbitrary as restricting a defendant's television-viewing or video game playing for the same reason." *Id.* "Such a rationale essentially amounts to *punishment* imposed in the hope that a change in the defendant's behavior will follow. Punishment is not an acceptable basis for release conditions." *Id.*

I nonetheless agree with the majority that the condition is "reasonably related" to the relevant statutory factors based on Ellis's history of leaving the jurisdiction and failing

42

to make contact with his probation officer at the appropriate time. But I do not agree that six months of GPS monitoring is a condition that "involves no greater deprivation of liberty than is reasonably necessary" to address those concerns. § 3583(d)(2).

The restriction of Ellis's liberty that results from the location monitoring condition is substantial. Location monitoring tracks all of the supervisee's movements at all times. And maintaining the monitoring device comes with its own burdens. Not only must Ellis ensure that he always has enough charged batteries with him, there is also a $3 per day fee that he must pay probation to cover the cost of the tracking device. That amounts to $546 for the six months of monitoring, which is not insignificant for an indigent defendant like Ellis. The majority takes pains to point out that "the probation officer explained that supervisees are encouraged 'to pay if they're able,'" and that "the probation office would not revoke a supervisee's supervised release for failure to pay." Maj. Op. at 33. But that does not negate the existence of the fee. If Ellis is able to secure employment that might otherwise allow him to start saving money to ensure a more stable financial future, he must first pay the monitoring fee, rather than taking these important steps toward his reentry.

In light of the substantial burdens imposed by the location monitoring condition, I cannot agree that the condition is no more restrictive than reasonably necessary to address Ellis's past conduct while on supervised release. This is particularly true in light of the fact that by the government's own admission, Ellis fully complied with conditions relating to where he was allowed to be during his most recent term of supervised release from December 2019 until June 2020. The violations that resulted in his re-incarceration in June of 2020 had nothing to do with his location. And during the most recent revocation hearing,

43

the district court acknowledged that "[y]our lawyer talks about how you've made good progress, and I believe she's correct." J.A. 163.

The condition is also not the least restrictive means to ensure compliance with SORNA, which Ellis was originally charged with violating. The mechanisms set forth in SORNA itself are all that is "reasonably necessary" to effectuate its purpose. A condition as restrictive as location monitoring goes too far. Taking together SORNA's requirements and Ellis's other conditions of release, he must (1) report to his probation officer within three days of his release from prison and obtain approval of his living arrangements; and (2) if the living arrangements qualify as a change in residence, inform the jurisdiction within three business days. *See* J.A. 166; 34 U.S.C. § 20913(c). These requirements are sufficient to effectuate SORNA's purpose. Six months of location monitoring is overkill.

## III.

For the foregoing reasons, I cannot agree with my colleagues in the majority that the two challenged conditions of release comply with the requirements of § 3853. Both conditions are overbroad and restrict more of Ellis's liberty than is reasonably necessary. Because I would vacate both conditions, I respectfully dissent.

44